## JOHN FLYNN

### *v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed June 14, 1906—Rehearing denied October 10, 1906.*

1. CRIMINAL LAW—*when instruction relating to self-defense is misleading.* An instruction holding that the defendant is not entitled to acquittal under his plea of self-defense unless he had "endeavored to decline any further struggle," is misleading as applied to a case where no struggle had taken place between the parties.

2. SAME—*presumption of innocence exists until jury agree.* A defendant in a criminal case is entitled to the benefit of the presumption of innocence through all the steps of the trial and during the consideration of the evidence by the jury, after they have been instructed by the court and until they agree upon their verdict.

3. INSTRUCTIONS—*when instruction as to presumption of innocence is erroneous.* An instruction is erroneous which merely requires the jury to give the accused the benefit of the presumption of innocence "throughout the trial until evidence shall have been introduced which to the minds of the jury is sufficient to establish the guilt of the defendant beyond all reasonable doubt, and if such evidence be not introduced then defendant should have the benefit of such presumption through all stages of the trial."

4. APPEALS AND ERRORS—*when improper remarks cannot be justified as in response to others.* An attorney who has made improper remarks in his argument will not be permitted to justify his course by saying that they were made in response to improper statements by opposing counsel, unless such statements are preserved in the record and abstracted.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding.

DANIEL DONAHOE, and JAMES HARTNETT, for plaintiff in error.

W. H. STEAD, Attorney General, JOHN J. HEALY, State's Attorney, and FRANK CROWE, for the People.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

John Flynn was indicted by the grand jury of Cook county in January, 1905, for the murder of Peter J. Warren, charged to have been committed on January 22, 1905. He interposed a plea of not guilty and contended that the killing was done in self-defense. Upon a trial in the criminal court the jury returned a verdict in the following words: "We, the jury, find the defendant, John Flynn, guilty of man-slaughter in manner and form as charged in the indictment and we fix his punishment at imprisonment in the penitentiary, and we recommend him to the mercy of the court." A motion for a new trial was overruled, defendant was sentenced upon the verdict, and prosecutes this writ of error.

John Flynn, at about one o'clock in the morning of Sunday, January 22, 1905, was working for the Chicago City Railway Company on Halsted street, in the city of Chicago, removing frozen ice and snow from the gutter near the curb with a pick. Thomas Jordan and John Brannan were working with him. Other men in the employ of the same company and engaged in the same work were working a short distance away. The night was dark, and the other men were not in a position to see Flynn and the two men working with him. While Flynn was so at work, Peter Warren, the deceased, Frank Langlois, William Miller, and a man named Duchelle, passed along the street. These men had been spending the last few hours in the saloons, and the evidence indicates that they were all intoxicated.

Miller, who testified on the part of the prosecution, recites the fact that the members of the party of four had taken a number of drinks, and says that he was not perfectly sober; that he was drinking a little,—was just feeling good,—had a few beers in him; that he had knowledge of what he was doing, and that he thought that a man who is intoxicated don't know what he is doing. As to Warren's condition,

Miller says: "He was sober. He was not too sober; he was what I call drunk. He was not too sober or too drunk."

As Warren and his associates passed the place where Flynn was at work, Langlois and Duchelle were walking ahead. Warren and Miller were walking together about twenty-five feet behind the other two. Miller testifies that as they reached the place where Flynn was at work, Warren turned and stepped towards the gutter, and thereupon Flynn, without anything having been said by him to Warren or by Warren to him, ran up and struck Warren on the head with a pick handle. Warren, who was then twenty-two years of age, was removed to the People's Hospital, where he died on January 29 from a skull fracture caused by the blow inflicted by Flynn.

Langlois, who was walking ahead, says that as he went past Flynn and his co-laborers he made some joking remarks to them. The next thing he noticed he heard "someone holler," and walked back and found that Warren had been struck, and assisted in carrying him away. Duchelle did not testify. Jordan testified on behalf of the prosecution, and says that as Warren passed where he was working with Flynn, Warren said: "Pick up, you sons of bitches, pick up," and Flynn told Warren to go ahead and mind his own business; that nobody was interfering with him, and that one of the two who had preceded Warren along the sidewalk called him to "leave those fellows alone—they are all right;" that Warren then walked away about ten feet, turned and came back, and as he did so applied to Flynn an epithet too foul for repetition, and said to him, "Nobody ain't kidding with you;" that he approached within two feet of Flynn; that Flynn staggered over sidewise and then straightened up and struck Warren; that Warren was then taken away by his friends and Flynn continued at his work.

Brannan testified on the part of the defendant. His testimony is in substantial accord with that of Jordan, and it appears from the evidence of both that immediately before

Warren was struck he had his right hand in his overcoat pocket, and that his manner toward Flynn was threatening.

Flynn testifies that when Warren came back to where Flynn was at work, Warren struck him on the left side of the head with a stone, saying immediately thereafter: "You dirty —— —— —— son of a bitch; I will kill you," and thrust his right hand in his overcoat pocket in a threatening manner; that he, Flynn, staggered from the blow, and when he straightened up he struck Warren with a pick handle; that he had never seen Warren before and did not know him, and struck the blow without any purpose of killing Warren, but for the purpose of defending himself; that shortly thereafter his head troubled him and he quit work and went home. He remained there until the succeeding Friday, when he was arrested there, and when arrested was asked by the policeman making the arrest who struck the blow that injured the boy, and he replied that he did not know. While at the station he found that Brannan and Jordan, and four other men who had been working for the Chicago City Railway Company near him on Halsted street on the morning of January 22, were also in the police station under arrest. Each of these men was arrested for the reason that it was believed by the police or the prosecuting officers that some one of them had struck the blow that injured Warren. Each was examined in the "sweat-box" and each denied that he knew who struck Warren. They were kept in the police station several days without being taken before any court or judicial officer. Later, Flynn, upon learning that Warren was' dead, told the police officers that he was the man who had inflicted the fatal blow.

The evidence shows that Flynn, at the time of the altercation, was twenty-nine years of age; that he was born in Ireland and lived there until he was twenty-two years of age; that he was a married man, residing with his family, and had been in the employ of the Chicago City Railway Company as a laborer for about two years prior to this diffi-

culty, and that his reputation as a peaceable and quiet citizen was good.

The only evidence in this record which supports this conviction is that of Miller.   The evidence of Jordan and Brannan is entirely consistent with, and lends support to, the theory of self-defense upon which Flynn sought an acquittal. The fact that they did not see Warren strike Flynn may perhaps be explained by the darkness.   Both swear they saw Flynn stagger as Warren approached, and Flynn swears that the staggering resulted from Warren's blow with the stone.   We do not regard the fact that Flynn denied having struck the blow, when undergoing the "sweating" process, as of any moment.   He could not be lawfully required to make any answer that would incriminate him, and no doubt made answer in the way he did for the purpose of relieving himself of the importunities of those who had no right to insist that he reply when he did not desire to do so.

As this judgment must be reversed and the cause remanded, we refrain from any further discussion of the evidence.   It is a case in which the instructions should have been accurate.

The twenty-first instruction given on the part of the People, after advising the jury that an acquittal cannot be justified on the ground of self-defense unless it appears that the accused believed, at the time of striking the blow, that he was in danger of losing his life or receiving great bodily harm or injury, continues: "And it must also appear that the person assaulted by the defendant was the assailant,— that is, that the defendant had really and in good faith endeavored to decline any further struggle before such assault was made by him,—before an acquittal is warranted on the ground of self-defense."

This instruction is correct when given in a case where the accused and the deceased had been engaged in a fight or struggle preceding the time when the fatal blow was given, but it was wholly inapplicable here, where there had been

no such struggle, and the idea conveyed to the jury was that Flynn was not entitled to an acquittal unless he had "endeavored to decline any further struggle" before he struck Warren with the pick handle. Manifestly that is not the law of this case. No struggle had taken place between them, and for that reason the instruction was inaccurate and misleading.

Flynn asked an instruction in reference to the presumption of innocence. The court modified it and gave it as modified, in these words:

"The court instructs the jury that it is their duty to presume the defendant, John Flynn, not guilty. That it is the duty of the jury to give the defendant the benefit of this presumption throughout the trial *until evidence shall have been introduced which to the minds of the jury is sufficient to establish the guilt of the defendant beyond all reasonable doubt, and if such evidence be not introduced then defendant should have the benefit of such presumption through all stages of the trial.* And further, it is the duty of the jury to explain the evidence offered against the defendant upon the hypothesis that the defendant acted in self-defense, if they can reasonably and consistently do so in the light of the whole evidence."

The words which we have italicized were inserted by the court in lieu of the words, "and when they shall have retired to consider of their verdict," which were contained in the instruction as requested.

This modification was erroneous. The jury were thereby authorized, upon consideration of the evidence for the prosecution, if they deemed that evidence sufficient to establish the guilt of the defendant beyond all reasonable doubt, to then take away from the defendant the benefit of the presumption of innocence and consider the evidence offered in his behalf without any regard to that presumption. The defendant is entitled to the benefit of the presumption of innocence through all the steps of the trial and during the con-

sideration of all the evidence by the jury after they have been instructed by the court, and until they determine, from a consideration of all the evidence, that the guilt of the defendant has been established beyond a reasonable doubt. The presumption of innocence attends the accused at every stage of the proceedings until the jury agree upon a verdict. *Everett* v. *People,* 216 Ill. 478; *Cochran* v. *United States,* 157 U. S. 300; *Kirby* v. *United States,* 174 id. 55.

Plaintiff in error has devoted forty-seven pages of his brief and argument to a discussion of assignments of error questioning the course pursued by the assistant State's attorney, who prosecuted in the criminal court, in examining witnesses and in arguing the cause to the jury. We are inclined to think that some of the remarks of the prosecutor in argument should not have been made. Defendant in error seeks to justify these remarks, in part, by saying that they were in response to statements of like character made by counsel for plaintiff in error. The abstract does not show anything that was said in the argument of the cause by those who spoke for Flynn. An attorney who has, in his argument to the jury, transgressed the rules of law and the ethics of his profession by making remarks that were improper and prejudicial to the opposite party will not be permitted to justify his course by saying that he was answering improper statements made by his opponent, unless such statements so made by his opponent are preserved in the record and abstracted, so that we may determine whether they warrant the reply made to them.

In this case, however, we place the reversal upon the ground that the court erred in giving the People's twenty-first instruction and in modifying the instruction asked by defendant below, which, as modified, is hereinabove set out.

The judgment will be reversed and the cause will be remanded to the criminal court of Cook county.

*Reversed and remanded.*