(No. 13765.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD REDOLA, Plaintiff in Error.

*Opinion filed December 22, 1921.*

1. CRIMINAL LAW—*what questions are improper in examination of jurors.* A defendant in a criminal case, in examining jurors upon their *voir dire,* has a right to advise them of the presumption of law in favor of his innocence and to ascertain whether they will act upon that presumption and give him the benefit of it in considering the evidence but has no right to demand jurors who have a present belief that he is innocent, and it is proper to sustain objections to questions asking a juror if he believes, before hearing the evidence, that the defendant is innocent.

2. SAME—*what statement volunteered in testimony of police officer is prejudicial to defendant.* In a prosecution for the larceny of an automobile, where the defendant claims he was merely driving the car for another person, whom he was to meet at a certain hour at a certain hotel, a statement volunteered in the testimony of a police officer that the police called the hotel every fifteen minutes and had such person paged is merely hearsay, where the witness has no personal knowledge of what was done at the hotel, and the statement is prejudicial to the defendant in leaving the impression with the jury that there was no such person at the hotel, without having that fact testified to directly by a witness under oath who knew the fact.

3. SAME—*evidence of the defendant's reputation as a peaceable citizen is not relevant in trial for larceny.* The theory upon which proof of the defendant's reputation is admitted in evidence in his favor in a criminal case is that the reputation proved is at variance with the nature of the crime charged, and on a trial for the larceny of an automobile the defendant is not entitled to prove his reputation as a peaceable citizen.

4. SAME—*argument of State's attorney must be based on the evidence.* It is the right and duty of a State's attorney to present the evidence to the jury and make all legitimate argument in behalf of the People based upon it, but he has no right to indulge in assertions not based on the evidence for the purpose of inflaming the minds of the jury against the defendant or his witnesses.

WRIT OF ERROR to the Circuit Court of Rock Island county; the Hon. WILLIAM T. CHURCH, Judge, presiding.

KENWORTHY, DIETZ, SHALLBERG, HARPER & SINNETT, and WILLIAM B. SCHRODER, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, BENJAMIN S. BELL, State's Attorney, JAMES B. SEARCY, and EDWARD L. EAGLE, for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The plaintiff in error, Edward Redola, was convicted in the circuit court of Rock Island county of the larceny of a five-passenger automobile upon an indictment consisting of two counts, the first charging him with larceny of the automobile, and the second with receiving the same knowing that it had been stolen.

In the examination of the jurors upon their *voir dire* one of them was asked this question: "I would like to ask you if now, before you have heard any evidence in this case, if you should be selected as a juror, can you start out on a trial of this case believing the defendant is innocent?" A similar question was asked of another juror, and this question was put to a third juror: "And do you in good faith believe him innocent before you have heard any of the evidence in this case?" Objections to these questions were sustained. The defendant had a right to a legal and impartial jury and to make any proper examination of each juror to ascertain whether he possessed the necessary legal qualifications, whether he had prejudged the question of guilt or innocence of the defendant, whether his mind was free from bias or prejudice, and any state of facts from which the defendant might deem it advisable to challenge him peremptorily in case he should be declared competent by the court. (*Lavin* v. *People,* 69 Ill. 303; *Donovan* v. *People,* 139 id. 412.) The defendant was entitled to examine jurors to ascertain whether they stood indifferently

between him and the People, as well as to make reasonable and pertinent inquiries to enable him to exercise his right of peremptory challenge. No juror would be competent who had prejudged the case and had a belief as to the guilt or innocence of the defendant. The main purpose of the examination is to secure jurors who have no present belief as to the guilt or innocence of the defendant and who can hear and consider the evidence with absolute impartiality. In the trial of the case the law establishes a presumption of innocence, which the jurors are required to entertain and act upon until convinced of the guilt of the defendant by evidence beyond a reasonable doubt and to weigh the evidence in view of that presumption. The defendant had a right, in the examination of jurors, to advise them of that presumption of the law and to ascertain whether they would adopt and act upon it and give him the benefit of it in considering the evidence, but he had no right to have jurors who had a present belief that he was innocent. The court did not err in sustaining the objections.

An automobile which was the property of Clarence Johnson and Elias Johnson was left by them standing on a street in Moline, Illinois, near a carnival at nine o'clock in the evening of July 28, 1920. Upon their return at 9:30 the car was missing and had been stolen some time during the intervening period. The next afternoon about four o'clock the defendant was driving the car in the city of Chicago and was arrested by Joseph Goldberg, a motorcycle policeman, for a violation of some traffic ordinance in crossing a boulevard. Goldberg testified that when he arrested the defendant he asked him who owned the machine, and he said that he did and had owned it about six months; that being asked if he had anything to show that he owned the car he showed the policeman a chauffeur's license, and told the policeman that he lived at 1888 North Paulina street; that there was no such number; that the policeman took him to a police station, where he asked him to unlock the

spare tire on the automobile; that he tried some keys and was unable to unlock it and offered the policeman some money to let him go; that he then told the policeman that he got the car in Moline and drove it to Chicago for George Jackson; that he was going to Chicago and Jackson asked him to drive the car, and he was to meet Jackson at the Jackson Hotel, at Jackson and Halsted streets, at six o'clock; that the defendant gave the policeman an address in Moline and one in Rock Island, and that the policeman took the defendant to another police station and put him in the lock-up. After stating that the defendant told him he was to meet Jackson at the hotel at six o'clock, Goldberg volunteered this statement: "So we framed at the hotel; we called the hotel every fifteen minutes and had Mr. Jackson paged," and the court overruled a motion to strike out the statement.

A police officer from Moline went to Chicago and took the defendant to Rock Island, and he testified that the defendant told him that a fellow hired him in Rock Island to drive the car to the Jackson Hotel and was to pay him $15.

The defendant testified that he was a mechanic and machinist; that he had lived in Chicago but had been in Rock Island about three years and had been working at the Rock Island arsenal until June 12, 1920; that he had lived at 830 Twenty-fourth street with David H. Smith; that he was laid off at the arsenal on account of an injury, and in June, 1920, was rooming at Mrs. Gleason's, at 824 Twenty-fifth street, in Rock Island; that eight or nine days before the 28th of July he had a talk with George Jackson about driving a car for him to Chicago; that Jackson called him by telephone on July 28 at the Gleason house, and he told Jackson he would not take the car for less than $15, and Jackson engaged him to drive the car; that Jackson came to the Gleason house about ten o'clock that evening, where the defendant was sitting on the porch with Harry Osgood; that Jackson called him, and he got his grip and driving

coat and took Jackson in the car down to Twenty-seventh
street and Eight and One-half avenue, where Jackson got
out of the car; that he got a cup of coffee and cigars and
drove the car to Chicago and that he was there arrested for
violating the traffic ordinance. He denied that he claimed
to own the car, but said he told Goldberg it belonged to
George Jackson and that he had driven it from Rock Island
for Jackson; that he told Goldberg his mother lived at
1844 North Paulina street, which was her correct address;
that he never offered Goldberg any money but told him he
was to meet Jackson at the Jackson Hotel if he could get
a room there but might have to go elsewhere and would
then try to find a garage; that if he did not stop at the
Jackson Hotel the defendant was to be there at six o'clock,
so that he could get him anyway, and that he might have to
take a room elsewhere.

Harry Osgood testified that he had been employed at
the Rock Island arsenal; that he had a family and resided
with them; that on July 28 he was at the Gleason house
from 8:00 or 8:30 in the evening until ten o'clock, when
the defendant left for Chicago; that a man came up with a
car, stopped in front of the house, called the defendant, and
said, "This is Jackson;" that the man got out of the car;
that the witness said "good-by," and the defendant went in
the house and got a grip and driving coat and said "good-
by," and that when the witness came away the defendant
was at the car, getting into it.

The statement volunteered by the policeman that they
framed at the hotel and called the hotel every fifteen min-
utes and had Jackson paged was not only incompetent but
very hurtful to the defendant. The court struck out a
statement of the witness that Jackson was not there, but
that was a natural inference from the statement that they
framed at the hotel and had Jackson paged every fifteen min-
utes. The witness had no knowledge of what was done at
the hotel, and did not even say that he was the one who

framed at the hotel. It was the clearest sort of hearsay
evidence, not made under oath by anyone who knew the
fact and subject to cross-examination or any other test as
to whether any page at the hotel actually looked for Jack-
son. The effect of it was to impress the jury that there
was no such man as Jackson, and if that was so, the jury
could not be expected to give any credit to the testimony of
the defendant.

For the purpose of proving a good reputation counsel
for the defendant asked witnesses if they were acquainted
with his general reputation in the community where he re-
sided as being a peaceable and law-abiding citizen or other-
wise, and objections were sustained to such question. One
charged with crime may always make proof of such previ-
ous good character as is inconsistent with the commission
of the crime with which he is charged, and the proof is to
be made by showing his general reputation. (*McCarty* v.
*People,* 51 Ill. 231; *Hirschman* v. *People,* 101 id. 568;
*Aiken* v. *People,* 183 id. 215.) He has a right to have the
question of his previous good character submitted to the
jury for the purpose of showing that it is not probable that
he committed the crime with which he is charged. The
theory on which the evidence is admitted is that the trait
of character is at variance with the nature of the crime
charged and the inquiry must relate to the defendant's char-
acter with respect to a crime of that nature. In the early
case of *Hopps* v. *People,* 31 Ill. 385, it was said in general
terms that it was competent for a defendant to give in evi-
dence his uniform good character as a man and citizen, and
the implication was that evidence should be admitted of
general good character; but later, in *Wistrand* v. *People,*
218 Ill. 323, it was held that a general reputation for a
trait of character not involved in the crime charged was
inadmissible, and that is the accepted rule. The question
asked the witnesses in this case included the reputation of
the defendant as to being peaceable, which had no relation

whatever to the crime of larceny of an automobile, with which he was charged, and it was not error to sustain the objections.

In the closing argument to the jury the State's attorney made this statement: "You cannot believe the testimony of that river rat, Osgood, who lives down on a mud island on the Mississippi river and does not stay at his home and bring up his children as they should be brought up, and who lives in a place over in Davenport, on Front street, the reputation of which you all know." What was said was supported by no evidence. The witness had testified that he had worked at the Rock Island arsenal but that summer he had camped on an island in the Mississippi river which he claimed to own. In reference to the defendant the State's attorney made the following assertion: "The defendant, Redola, showed by his testimony that he is a disloyal citizen; that because he had a soft job on the arsenal for several years during the war, he felt, after he was laid off at the arsenal, and acted and talked, as though he had been mistreated in being deprived of an easy job, and laid around and complained of the government's unjust treatment towards him; that he did not procure other employment but laid around a public park in the city of Rock Island and complained that he was unjustly treated by the government because he was discharged from his job." There was nothing in the record to justify any such statement concerning the defendant, and if there had been, the fact had no tendency to prove him guilty of larceny. The assertions concerning him and Osgood were made with the purpose and intended effect of inflaming the minds of the jury against them. It is the right and duty of a State's attorney to present the evidence to the jury and make all legitimate argument in behalf of the People based upon it, but he has no right to indulge in any such assertions as were made in this case.

Errors are assigned on the giving and refusal of instructions, but there was no material error in that respect and the objections are of such a nature as to not require an extended comment.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*