(No. 14329.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* THOMAS BERMINGHAM, Plaintiff in Error.

*Opinion filed February 22, 1922.*

1. CRIMINAL LAW—*defendant is entitled to benefit of presumption of innocence.* The defendant is entitled to the benefit of the presumption of innocence through all the steps of the trial and during the consideration of the evidence by the jury after they have been instructed by the court, and until they determine, from a consideration of all the evidence, that the guilt of the defendant has been established beyond a reasonable doubt.

2. SAME—*when judgment of conviction must be reversed.* The Supreme Court will reverse a judgment of conviction where, under the evidence, there is a serious doubt as to the defendant's guilt, particularly where the instructions given fail to cover an important element which the defendant was entitled to have considered by the jury.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. FRANK JOHNSTON, JR., Judge, presiding.

ROBERT L. COHAN, (THOMAS E. SWANSON, of counsel,) for appellant.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and GEORGE C. DIXON, (EDWARD E. WILSON, CLYDE C. FISHER, and HENRY T. CHACE, JR., of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Thomas Bermingham, plaintiff in error, was convicted in the criminal court of Cook county of the crime of robbery and sentenced on the verdict to the penitentiary at Joliet. To reverse that judgment he has prosecuted this writ of error.

Four witnesses testified for the State, the testimony of Lawrence Chain, one of such witnesses, being the follow-

ing: On January 29, 1921, he was in Fenton's saloon be-. tween 8:00 and 8:30 A. M. He saw Thomas Bermingham and several others talking. He heard someone say, "Let's get the gats and go." All went out of Fenton's saloon. There was a green Paige car standing in front. All went into this car. He did not see Bermingham personally step into the machine but thinks he did. All, about four or five in number, returned to the saloon about 11:30 A. M. Bermingham came in first. The others followed him. He then heard some of them say, "Tippy is a good old sport," and saw them divide some money at the end of the bar. Witness talked with Fenton, owner of the saloon, for a while. He was not in the Mulcahy saloon where the robbery occurred that day.

John Coughlin's testimony is the following: Is a bartender at the Mulcahy saloon. His left eye was hurt in an accident many years ago. He wears glasses but can see perfectly. Between 11:00 and 11:30 A. M. of January 29, 1921, three men came into the saloon and walked to the end of the bar. They waited there a few moments and went into the toilet. Then they returned to the main bar-room and left the saloon. In about half an hour they returned and again retired to the toilet. Then they returned to the bar-room and stood by the stove. Their conduct attracted his attention to them both times they were in the saloon. While they were standing at the stove, all of a sudden someone cried out, "Stick them up!" Bermingham pointed a revolver at him. He put up his hands and they then proceeded to rob the place, taking $2600 from him, which was there to cash pay-checks for railroad men. On cross-examination he testified that Bermingham looked pale and nervous when he held his gun on him and was about three feet from him. There was nothing out of the ordinary about Bermingham's facial appearance and there were no particular marks on him that witness saw. He had on an army overcoat and a cap and was dressed in a blue suit.

He does not remember the color of his cap. Later he said Bermingham had on a brown suit, but did not know whether it was a square-cut coat or a sack coat. He never saw Bermingham before the day of the robbery, and only one of the three had a gun that he saw. About a week after the hold-up he had a talk with Mrs. Ellen Bermingham, mother of defendant, together with Mrs. Margaret and Mrs. Thomas Harnois, at the Mulcahy saloon. He may have told them then that he could not identify Bermingham as one of the men who held him up, and that he could not identify any of them except one, and him only partly. He does not know whether he did or not, but at the first trial he denied having any such conversation with the three women. He changed his answer at the second trial because he made a mistake. He did not think it was important. He did not know whether defendant's gun was nickel-plated or blue-steel.

U. I. Coons testified that all he knew about the robbery is that he was in the Mulcahy saloon that morning about 11:30 and was hit on the head from the rear and could not identify anybody.

Detective sergeant Goggin testified that he arrested Bermingham one week after the robbery. When he questioned him he denied having anything to do with the robbery.

For plaintiff in error, John P. Fenton testified that he owns a saloon at Sixty-first street and Princeton avenue. He and over twenty other people were arrested in connection with this robbery. At the bureau of identification, where he, Bermingham and several others were lined up to be identified, Coughlin did not identify Bermingham as one of the men who held him up. He has known Bermingham many years. On the day of the robbery witness did not go down to his saloon until noon. He does not know Lawrence Chain and did not talk with him on the morning of the robbery. When witness came to his saloon two men were there playing cards, whose names were Carr and Kennan.

John W. Carr testified that on the day of the robbery he was at Fenton's saloon between 9:00 and 9:30 in the morning. He played cards and drank near-beer there with Barney Kennan until four or five o'clock in the afternoon, continuously. He knows that Bermingham was not in Fenton's saloon during the whole day of January 29, 1921, and that Kennan can say the same thing. Fenton did not come down to the saloon that day until about 12:30. He does not know Lawrence Chain and did not see him in the saloon that day. He did see Bermingham on January 28, 1921, and knows that he then had a black eye and a split lip.

Barney Kennan, a switchman, who went to Fenton's saloon to cash his pay check about 8:30 or 9:00 o'clock in the morning of the robbery, testified that he played cards there with Carr until after four o'clock in the afternoon; that he does not know Lawrence Chain and did not see him in Fenton's saloon that day, and that he saw Bermingham on January 28, and knows that he had a black eye and a split lip.

Mrs. Margaret Harnois testified that about a week after January 29, 1921, she and her daughter-in-law, Mrs. Thomas Harnois, and Mrs. Ellen Bermingham, went to see John Coughlin, bar-tender at Mulcahy's saloon, and got there about twelve o'clock. Heard Mrs. Bermingham ask him if he identified her son, and he said he was not sure that Bermingham was one of the men that held him up. Mrs. Ellen Bermingham testified to the same conversation as did Margaret Harnois; that she asked Coughlin if he identified her son, Tom, and that he said he could not identify anybody except one fellow, but he was not sure of him; that her son had never been in any trouble before in his life; that he came to her house for supper on the evening of January 29, 1921, and that he then had a black eye and his lip was split.

Owen Duffy testified that on January 29, 1921, at about 11:30 A. M., he was about to go to his son's store, at Seventy-ninth street and Vincennes avenue; that he saw

Bermingham and his wife and two children waiting for the street car and talked with him several minutes until the car came; that he saw them take a west-bound Seventy-ninth street car; that he had met them on that corner twice before, as his son's store is right at this corner; that he has known defendant's mother for thirty years and they are very good friends.

Clara Krampstra testified that she lives at Eighty-third street and Ashland avenue, on a farm. Bermingham and his wife were out there talking about renting the farm twice before the robbery. She was absent from home on that morning and returned about three P. M. She learned when she returned home that someone had called her that day but over objection was not allowed to state the name of the party calling. Her ten-year-old daughter, living at the same place, testified that she saw Mrs. and Mr. Bermingham on January 29, 1921, about twelve o'clock, at their farm. They were looking the farm over and went to the shed there and looked at a lot of onions. She knows it was twelve o'clock because she heard the whistles blowing. She knows it was Saturday because she was home from school, but which Saturday it was she was not certain, but fixed it as January 29 because Bermingham was arrested one week after that date. Bermingham's eye was black and his lip was cut that day.

Plaintiff in error testified that he lived at 5146 Princeton avenue, Chicago. He had been working for the Consumer's Company, hauling coal in the winter and ice in the summer time. About three days before January 29, 1921, he got a black eye and a split lip working around the barn. He never was arrested or convicted of any crime in his life. He had before said date been twice to Mrs. Clara Krampstra's farm, at Eighty-third street and Ashland avenue, to see about renting her farm, and on that day left his home about ten o'clock with his wife and two of his children to go to this farm. He went down Fifty-second street, got a

car going south to Seventy-ninth street and took a Seventy-ninth street car west to Ashland avenue. While waiting for the car at Seventy-ninth street and Vincennes avenue he met Owen Duffy and talked with him for a few minutes until his car came. When he got to the farm the lady who owned it was not there and he waited there until about two o'clock. He looked at some onions in the shed on the farm with one of Mrs. Krampstra's daughters. He went from there to his mother's house for supper. He was arrested on Saturday, a week later, as he was going to the corner to buy cigarettes. He knows absolutely nothing about this robbery. He never owned an army overcoat in his life, did not own a blue suit, and never wore a cap, because it did not become him.

Mrs. Mary Fidell testified that she lived up-stairs at the place where Bermingham lived. She saw him January 29, 1921. He had a split lip and a black eye. She saw him leave the house about ten o'clock on that morning with his wife and two of his children, and they did not come back until about six o'clock that evening.

The foregoing states the evidence in full of all of the witnesses as it occurs in the record. This was the second trial, the jury having disagreed on the first trial. The evidence for the People upon which the conviction rests, as shown, was given by three witnesses, Coughlin, Chain and Coons. Coughlin practically admits that he had made a former statement out of court that he was not certain of the identity of plaintiff in error as one of the men who held him up. His own evidence is contradictory, in that he first stated that Bermingham then had on a blue suit and later testified that it was a brown suit. We think it is important that he made contradictory statements in his evidence on the two trials as to what he told Mrs. Bermingham as to his ability to identify Bermingham as one of the men who robbed him. While he is corroborated in a way by Chain, yet Chain stated the number of men that he saw at Fenton's

saloon and who there divided the money was four or five, and he is not certain whether Bermingham was one of the men that got into the Paige automobile.   Chain is also contradicted in his statement that he was in Fenton's saloon that morning and had a conversation with Fenton, by three witnesses, Fenton, Carr and Kennan, who testified that they did not see him in the saloon at all that day.   Coughlin stated that he was held up by only three men, and he testified nothing about their coming in a Paige automobile or any other kind of automobile.   Coons did not directly testify that there was a hold-up of Coughlin, or how many men were there, or what any one of the three did, or whether or not it was any one of the three that struck him.   Coughlin did not notice any facial marks on the man who held him up, while a number of defendant's witnesses testified that he had a black eye and a cut or a split lip. The alibi of Bermingham is complete, and he was not there if his witnesses stated the truth.   He is either innocent or a number of his witnesses have committed perjury or are unaccountably mistaken as to facts to which they testified.

Four instructions were given for the People and three for plaintiff in error.   None of the instructions given informed the jury concerning the law as to the presumption of innocence.   An instruction was tendered by the defendant bearing upon this question, but it was properly refused because it was coupled up with other matter not proper to be given to the jury.   The other matter was, in substance, that it was not necessary that the jury should entertain a strong doubt of the guilt of the defendant when all of the evidence is considered together, and that if the jurors could give a good reason, based on the evidence, tending to raise doubt as to his guilt, then they should have a reasonable doubt and acquit him.   The defendant is entitled to the benefit of the presumption of innocence through all the steps of the trial and during the consideration of all of the evi-

dence by the jury after they have been instructed by the court, and until they determine, from a consideration of all of the evidence, that the guilt of the defendant has been established beyond a reasonable doubt. This is particularly essential to a fair trial for a defendant when the evidence is in such great conflict as it is shown to be in this case. (*Flynn* v. *People,* 222 Ill. 303; *People* v. *Israel,* 269 id. 284; *People* v. *Krittenbrink,* id. 244.) It is no part of the court's duty to prepare instructions for either party to a criminal prosecution, or to re-write an erroneous instruction so that it will state correctly the law of the case not covered by other instructions. We will not, however, affirm a judgment of conviction in any such case where the evidence leaves us in serious doubt of the defendant's guilt. We think that this case ought to be tried by another jury, inasmuch as the jury disagreed in the first trial, when the evidence of the People was evidently stronger than it is in this trial by reason of the fact that Coughlin in that trial positively denied his statement to the two women in regard to his ability to identify plaintiff in error as one of the guilty men. We are not so advised, but it is not probable that his evidence was conflicting in the first trial as to the color of clothing worn by defendant. Coughlin ought not to be mistaken in his judgment as to whether or not defendant had on an army overcoat or whether or not he wore a hat or a cap, and if the defendant was in the habit of wearing either of such articles it ought to be a matter easily established.

The judgment of the criminal court is reversed and the cause is remanded.

*Reversed and remanded.*