(No. 18926.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES CELMARS, Plaintiff in Error.

*Opinion filed October 25, 1928.*

CHARLES T. MCELWEE, JR., and GEORGE Z. BARNES, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, HENRY C. PRATT, State's Attorney, and ROYCE A. KIDDER, (FREDERICK F. BECKMAN, of counsel,) for the People.

Mr. CHIEF JUSTICE DEYOUNG delivered the opinion of the court:

The plaintiff in error, James Celmars, was convicted in the circuit court of Peoria county of the crime of rape and in accordance with the verdict of a jury was sentenced to twenty-three years' imprisonment in the penitentiary. He prosecutes this writ of error for a review of the record.

Myrtle Reese, the prosecutrix, white, unmarried and upwards of twenty-one years of age, and the plaintiff in error, colored, twenty-six years old, reside in the city of Peoria. The testimony of the prosecutrix is substantially as follows: On November 26, 1927, about 6:15 A. M., she left her home to go to work. After she had gone a short distance on Jefferson street she met a man going in the opposite direction. She turned on Green street, and as she reached an alley the man whom she had met on Jefferson street overtook her from behind, put his cap over her eyes, pushed or dragged her in the alley to a point near a street light, held his hand over her mouth and demanded her money. When her assailant discovered that she had no pocket-book, he, despite her resistance, threw her to the ground, tore her clothing and committed the act charged. He told her to make no outcry and ran away. She returned to the street, crying, met William Birmingham, a railway crossing-flagman, and told him what had occurred. He took her to a restaurant. She identified the plaintiff

in error as her assailant when he was brought into her presence after his arrest on the morning of December 17, 1927, and she later recognized his voice when he spoke in the police court.

William Birmingham testified that the prosecutrix stopped him at the corner of Green and Adams street one morning at about 6:35 o'clock; that she had mud on her hands and that he took her to Saylor's restaurant. From the testimony of Maude M. Saylor it appeared that Birmingham brought the prosecutrix to her restaurant on a certain morning; that she was dirty and hysterical at the time but made no complaint; and that the witness called the police and they took the prosecutrix away.

Glen Ford, a city detective, testified that on December 17, 1927, at about 6:45 A. M., he and Albert Whittaker, another detective, while seated in an automobile, saw a man walking rapidly along Bryan street towards Madison street, in the city of Peoria; that after he had crossed an alley the officers turned the spot-light of their car upon him, whereupon he turned and ran down the alley; that the witness pursued him on foot but the man eluded him; that the two officers then continued their search by automobile and on another street discovered a man emerging from an alley and walking down the street towards a corner; that one of the officers alighted from the automobile and followed him; that the man turned and the officers arrested him, and that he proved to be the plaintiff in error.

The substance of the testimony of the plaintiff in error is as follows: He was a waiter at the Creve Cœur Club of Peoria and had been employed there eighteen months. He started his daily work alternately at 7:00 and 11:00 A. M. On the morning of November 26, 1927, he was awakened at 6:00 o'clock. Marie Bibbs was in the room with him. He did not arise until 10:30 o'clock and reached the club at 11:05 A. M. On the morning of December 17, 1927, he arose at 6:25 o'clock, started a fire, brought two

buckets of coal from the shed and left home at 6:45 A. M. to go to work. He walked down certain streets, and when he passed the Court Hotel, on Jefferson street, two officers in an automobile approached and asked him where he was going. He answered that he was on the way to his work. They then inquired where he was employed, and he told them at the Creve Cœur Club. The officers arrested him and took him first to police station, then to the home of the prosecutrix, who was called but failed to identify him, still later to three other places, and finally back to the police station. He denied that he had ever seen the prosecutrix prior to the time the officers took him to her house on the morning of December 17, 1927, or that he had committed the crime charged against him.

Marie Bibbs testified that she was twenty-seven years of age and lived with the plaintiff in error as his wife; that she was employed as an elevator operator at the Jefferson Hotel, in Peoria, and started to work at 7:00 A. M. and 12:00 M. on alternate days; that when she left home on the morning of November 26, 1927, at 6:20 o'clock, plaintiff in error was still in bed though not asleep, and that on the day of his arrest he arose at about 6:15 A. M., started a fire, washed and dressed and left the house at 6:40 o'clock.

Era H. Palmer, the manager of the Creve Cœur Club, testified that the time-book showed that on November 26, 1927, the plaintiff in error began work at 11:00 A. M., and that he was paid for his work on that day. Henry Houston, the head waiter of the same club, testified that the plaintiff in error worked on November 26, 1927, and that he was always attentive to duty and sober-minded.

The first contention for a reversal of the judgment is that sufficient time was not allowed the plaintiff in error within which to prepare his defense. The indictment was returned on January 12, 1928. Two days later the trial court appointed counsel to defend the plaintiff in error. The trial had been fixed on Monday, January 16, and on

that day a motion, supported by an affidavit, was made seeking a postponement of the trial until the March term of court to give the attorneys for the plaintiff in error time to prepare for trial. The motion was denied and the case was set for trial on January 23, 1928. When the case was called on that day no request was made for further delay and no intimation was given the court that counsel were not then ready, and the trial proceeded. It is only when the trial court has abused its discretion in denying a reasonable time for the preparation of the defense that a court of review will interfere with the trial court's action. (*People* v. *Rasmussen,* 328 Ill. 332; *People* v. *Bopp,* 279 id. 184; *North* v. *People,* 139 id. 81.) In the absence of a motion or request for additional time to prepare the defense when the case was called on January 23 this court cannot say that plaintiff in error has been denied the right properly to prepare and to present his defense.

It is contended that it was improper to admit in evidence a written statement signed by Marie Bibbs without first showing the circumstances under which it was made. The State's attorney sought to impeach the witness by the statement and upon cross-examination interrogated her concerning it. She admitted that it was read to her and that she signed it. The statement was not incorporated in the record, and it does not appear how the plaintiff in error was prejudiced by it.

Complaint is made that the cross-examination by the State's attorney of the witness Henry Houston was highly prejudicial to the plaintiff in error. After the witness had stated that he was acquainted with the general reputation of the plaintiff in error for veracity and as a law-abiding citizen, inquiry was made concerning that reputation, and he answered that plaintiff in error was attentive to duty and sober-minded. On cross-examination the State's attorney asked the witness, "Did you make it your business to learn whether he had ever been in any penal institution?"

An objection to this question was sustained. The State's attorney persisted by asking, "Well, did you know about his being in the reformatory?" Objection was again made and sustained. Proof of the general reputation for an entirely irrelevant trait of character not involved in the crime charged is inadmissible. (*People* v. *Redola,* 300 Ill. 392; *Wistrand* v. *People,* 218 id. 323.) The answer adduced on the direct examination of the witness that the plaintiff in error was attentive to duty and sober-minded was not pertinent to the real inquiry, namely, his reputation for chastity, and would have been excluded upon a proper motion for that purpose. On cross-examination or in rebuttal of proof of good character, particular acts of misconduct may not be shown. (*Aiken* v. *People,* 183 Ill. 215; *Gifford* v. *People,* 87 id. 210; *McCarty* v. *People,* 51 id. 231.) The questions asked by the State's attorney on cross-examination had no justification. Their tendency was to prejudice the plaintiff in error in the minds of the jury, and merely to sustain objections to them would not necessarily remove that prejudice. A person on trial charged with a particular crime is not required to defend against every possible aspersion which may be made against him but which is in no way connected with the issue to be determined. Where such aspersions appear in the record the question is not what a court of review may think of the defendant's guilt or innocence, but what the jury would have done if the case had been submitted to them without those aspersions. This court has often condemned the practice, in criminal cases, of asking improper questions for the purpose of creating in the minds of the jury a prejudice against the defendant, and judgments of conviction have been reversed for such conduct. (*People* v. *Rogers,* 324 Ill. 224; *People* v. *Black,* 317 id. 603; *People* v. *Lewis,* 313 id. 312; *People* v. *Green,* 292 id. 351.) Cases of this character have a peculiar tendency to arouse men's prejudices, and it can not be said that the jury were not influenced by the ques-

tions improperly asked on the cross-examination of the witness Houston.

Complaint is made of the third instruction given to the jury at the prosecution's request. The instruction read as follows:

"The court instructs the jury if you believe from the evidence in this case that the defendant made an unlawful assault upon the complaining witness in manner and form as set forth in the indictment you have the right to take into consideration all of the facts and circumstances appearing in the evidence, and you also have the right to take into consideration the superior strength of the defendant at the time of the assault, if any is proven, and the suddenness of the attack, the manner in which the attack was made, if the attack was made in the daytime or the night time, the surroundings and place where the alleged attack was made, and any and all other surrounding facts and circumstances appearing from the evidence."

By this instruction the superior strength of the plaintiff in error and the suddenness of the attack were assumed as facts. These assumptions necessarily involved the precedent assumption that plaintiff in error had committed the assault. It is not the province of the court, in an instruction to the jury, to assume the truth of any controverted fact. (*People* v. *O'Connor,* 295 Ill. 198; *People* v. *Novick,* 265 id. 436.) Under our statutory limitations, the court, in charging the jury, is only permitted to instruct concerning the law of the case. The instant charge is rape, which is the carnal knowledge of a female forcibly and against her will. Force is an essential element where the female is of the age of consent and physically and mentally able to offer resistance. There is no rule of law as to what particular acts will prove that carnal knowledge of a female was against her will. In considering the evidence in this case the jury would take into consideration the particular matters stated in the instruction. These matters were

proper for argument to the jury but not for instructions by the court. (*People* v. *Eccarius*, 305 Ill. 62.) The defense of the plaintiff in error was that he had never seen the prosecutrix and was not her assailant. The evidence was conflicting, and in such a case the instructions should be accurate and should not improperly influence the jury in determining questions of fact. (*People* v. *Ambach*, 247 Ill. 451; *People* v. *Rogers, supra*.) The third instruction was prejudicially erroneous and should not have been given.

For the errors indicated the judgment of the circuit court is reversed and the cause is remanded to that court for another trial.

*Reversed and remanded.*