THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CARL WEATHERS, Defendant-Appellant.

(No. 58493;

First District (1st Division)—November 4, 1974.

*Rehearing denied November 28, 1974.*

James J. Doherty, Public Defender, of Chicago (Gail Moreland and James N. Gramenos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Edna Selan Epstein, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HALLETT delivered the opinion of the court:

Defendant was indicted for armed robbery (Ill. Rev. Stat. 1971, ch. 38, par. 18—2) and tried before a jury. He was convicted and sentenced to a term of from 3 to 9 years in the Illinois State Penitentiary. He ap-

peals, asking that we reverse his conviction and remand the case for a new trial.

Four issues are presented: (1) whether the defendant was denied due process of law when the trial court denied his motion to suppress identification testimony (2) whether the trial court abused its discretion when it refused to permit the defendant to produce two witnesses at trial who would have testified favorably respecting his reputation in the community for truth and veracity; (3) whether the trial court erred when it issued a limiting instruction to the jury over defendant's objection concerning testimony at trial respecting his involvement in another crime; and (4) whether the defendant was denied due process of law as the result of comments by the prosecutor in his closing argument to the jury. For reasons which follow, we affirm the conviction.

The victim of the armed robbery testified that the robber approached him on the street at night beneath a high-intensity illumination street lamp. The robber pulled out a gun and instructed the victim to part with the money in his wallet. The victim had ample opportunity to observe the robber closely and he subsequently provided police with the following description of him: male, black, slightly taller than 5 feet 8 inches, about 155 pounds, early twenties, moustache, and dressed in an army fatigue jacket with the hood pulled up around his head. Later that evening, the victim picked the defendant out of a lineup conducted at police headquarters consisting of four black males of approximately the same height, weight, build and age after each man was made to utter these words spoken by the robber: "Give me some bread, man." In addition, an occurrence witness present near the scene of the crime, testified at trial that the same man who robbed the victim had first approached her on the street as she got out of her car. He brandished a gun and demanded that she give him her money. When she told him she had no money, he turned and walked across the street toward the eventual victim. She too had ample opportunity to observe the culprit at close range under bright lighting and she too provided police with a detailed description. Further, she identified the defendant as the culprit shortly after the crime. Police had come to her home and requested that she accompany them to police headquarters for the purpose of making an identification. As she walked out to their car, she saw a man seated in the back seat of a nearby parked car. She promptly identified him as the culprit. The car was an unmarked squad car. At the motion to suppress identification testimony, she stated that she identified the man without prompting from police and that she did not see him in handcuffs.

Defendant was found by police a short distance from the scene of

the crime within one-half hour after they received the armed robbery report. Defendant matched the description they had been given. They stopped and searched him, finding no money and no weapon.

Defendant took the stand at trial and denied committing the crime. He testified that he had been at the home of a friend when the crime was committed. The State produced the friend's mother as a rebuttal witness and she denied that defendant was in her home at that time. Defendant was convicted and this appeal followed.

## I

The first issue raised by defendant concerns whether the trial court erred when it denied his motion to suppress identification testimony by the victim of the armed robbery. Defendant argues that the testimony at trial should have been suppressed because it resulted from an unnecessarily suggestive lineup. He contends that the lineup was unnecessarily suggestive because he was the only one of the four men exhibited to the victim wearing an army fatigue jacket said to have been worn by the robber. Although we are mindful of the United States Supreme Court's warning in *U. S. v. Wade* (1967), 388 U. S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926, that there is an inherent danger of suggestibility in a lineup where a suspect is the only person exhibited to an identifying witness in "clothing which the culprit allegedly wore" (at 233), we nevertheless disagree for several reasons with the defendant's argument.

■■ Defendant has the burden of showing that the lineup was unnecessarily suggestive within the totality of the circumstances (*Stovall v. Denno* (1967), 388 U. S. 293, 18 L.Ed.2d 1199, 87 S.Ct. 1967; *People v. Norfleet* (1972), 4 Ill.App.3d 758, 764, 281 N.E.2d 761; *People v. Tuttle* (1972), 3 Ill.App.3d 326, 330, 278 N.E.2d 458) so as to give rise to a substantial likelihood of irreparable mistaken identification (*People v. Johnson* (1970), 45 Ill.2d 38, 45, 257 N.E 2d 3; *People v. Jackson* (1973), 12 Ill.App.3d 789, 793, 299 N.E.2d 142), and, in the event defendant should succeed in establishing that the lineup was invalid, then the identification in court may still be admissible provided that the State can show by clear and convincing evidence that the identification is based on an observation independent of the tainted lineup (*People v. Fox* (1971), 48 Ill.2d 239, 245, 269 N.E.2d 720; *People v. Griffin* (1973), 12 Ill.App.3d 193, 199, 297 N.E.2d 770). Of course, the nature of a lineup presupposes that there will be some differences in the persons exhibited to identifying witnesses. The crucial question so far as due process is concerned is where to draw the line between differences that are unnecessarily suggestive and those that are not. In the present case the lineup consisted of four black males of approximately the same

height, weight, build and age. All were dressed in winter coats except that defendant's was of the fatigue jacket variety. A similar argument to defendant's was rejected by this court in *People v. Wicks* (1969), 115 Ill.App 2d 19, 24-25, 252 N.E.2d 698, where defendant was the only person exhibited wearing a black trenchcoat of the sort the culprit had been said to have worn (see also *People v. Keane* (1970), 127 Ill.App.2d 383, 390, 262 N.E.2d 364; and *People v. Shaw* (1972), 6 Ill.App.3d 366, 368-369, 286 N.E.2d 3). In *Wicks* the court concluded that the lineup was not unnecessarily suggestive. They added that they were "reinforced" (at 24) in reaching their decision because the identifying witness had denied that the trenchcoat formed the basis of his identification of the defendant. He had stated that his identification was based on a recognition of defendant's voice. We are similarly reinforced in reaching our decision here that the lineup was not unnecessarily suggestive because of the identifying witness' testimony that he identified defendant as the culprit after defendant uttered words at the lineup allegedly spoken by the culprit at the time of the armed robbery. Since identification by voice is a permissible means of identification (*People v. Nelson* (1970), 127 Ill.App.2d 238, 245, 262 N.E.2d 225), we conclude that the lineup identification was valid.

■■ Second, we believe that the State met its burden of proving by clear and convincing evidence that the in-court identification was based on a source independent of the lineup. Indeed, the record shows that the identifying witness observed the culprit at close range for several minutes beneath a high-intensity street lamp. His description of the culprit to police was unwavering in detail and his identification of the accused was positive. Therefore, we hold that the trial court properly denied defendant's motion to suppress.

## II

Defendant next contends that the trial court abused its discretion when it refused to permit him to produce two witnesses at trial who would have testified favorably respecting his reputation for truth and veracity in the community. We disagree.

■■ Evidence of a defendant's reputation for truth and veracity is generally admissible in a criminal prosecution. To be admissible, however, such evidence must bear on some issue involved in the crime charged (*People v. Jinkins* (1967), 82 Ill.App.2d 150, 157, 225 N.E.2d 657). In a prosecution for armed robbery, evidence of a defendant's reputation for truth and veracity is not relevant to the issue of guilt; therefore, it is not admissible (*People v. Kendall* (1934), 357 Ill. 448, 456-457, 192 N.E. 378; *People v. Celmars* (1928), 332 Ill. 113, 163 N.E.

421; *People v. Redola* (1921), 300 Ill. 392, 133 N.E. 292). We conclude that the trial court properly refused to permit the testimony.

■■ Defendant further contends, however, that the prosecutor reflected in his closing argument to the jury that there was no basis for their believing that the defendant was a leader in his community. Defendant contends that such commentary was improper since he was not permitted to introduce evidence of his reputation. But defendant overlooks one rather significant point which, in our view, utterly destroys his argument. That point is that his own counsel told the jury in closing argument that defendant enjoyed a reputation as a leader in the community. In light of this point, the prosecutor's comments were proper since he was merely commenting on defense counsel's unsubstantiated remarks. Defendant cannot claim error when he induces it (*People v. Stock* (1974), 56 Ill.2d 461, 472, 309 N.E.2d 19; *People v. George* (1971), 49 Ill.2d 372, 379, 274 N.E.2d 26). We therefore hold that there is no merit to this argument.

## III

The third issue raised by defendant pertains to whether the trial court erred when it issued a limiting instruction to the jury over defendant's objection concerning testimony at trial respecting his involvement in another crime. Specifically, a witness testified that defendant had first attempted to rob her, and, when she told him that she had no money, he walked away and approached the eventual victim of the crime. The following instruction was given to the jury concerning her testimony:

> "Evidence has been received that the defendant has been involved in offense [*sic*] other than that charged in the indictment. This evidence has been received solely on the issue of the defendant's *identification, presence, intent, motive* and *design*. This evidence is to be considered by you only for the limited purpose for which it was received." (Emphasis ours.)

■■ Defendant objected to this instruction arguing that the word "motive" should have been deleted from the second sentence. IPI— Criminal 3.14, from which this instruction was derived, suggests that each of the words "identification, presence, intent, motive, design and knowledge" appearing in the second sentence may be kept or deleted from the instruction given at trial depending on the issues in a given case. Under the circumstances of this case, we think that "intent, motive, design and knowledge" should have been deleted because they are not relevant to the issue at trial; namely, whether the defendant took property from another by threatening the use of force while armed with a dangerous weapon (see Ill. Rev. Stat. 1971, ch. 38, pars. 18—1 and 18—

2.) The words "identification" and "presence" are relevant (see *People v. Jackson* (1961), 22 Ill.2d 382, 390-391, 176 N.E.2d 803). Therefore, the trial court should have sustained the defendant's objection. However, we do not believe that defendant was substantially prejudiced by the retention of the words since proof of the defendant's guilt was overwhelmingly established beyond a reasonable doubt by the two eyewitnesses who identified him and by the refutation of his alibi. We cannot say that retention of the words prejudicially influenced the outcome of the trial or that the jury's verdict could have been different had the words been deleted (*People v. Clark* (1972), 52 Ill.2d 374, 390, 288 N.E.2d 363; *People v. Koshiol* (1970), 45 Ill.2d 573, 580, 262 N.E.2d 446). We therefore decline to reverse on this ground.

## IV

■■ Defendant's final contention is that he was denied due process of law by Assistant State's Attorney Anthony Corsentino's closing argument to the jury. The State agrees that the prosecutor's argument was improper—they characterize his remarks as "infelicitous." However, they maintain, and we agree, that reversal would be improper here because the defendant was not substantially prejudiced by the remarks (*People v. Clark* (1972), 52 Ill.2d 374, 390, 288 N.E.2d 363; *People v. Nilsson* (1970), 44 Ill.2d 244, 248, 255 N.E.2d 432, cert. denied, 398 U.S. 954, 90 S.Ct. 1881, 26 L.Ed.2d 296; *People v. Arnold* (1973), 12 Ill.App.3d 826, 832, 299 N.E.2d 446) since, as we previously indicated, proof of his guilt was overwhelmingly established beyond a reasonable doubt and it is extremely unlikely that the verdict could have been otherwise if the remarks had not been said (*People v. Koshiol* (1970), 45 Ill.2d 573, 580, 262 N.E.2d 446; *People v. Nicholls* (1969), 42 Ill.2d 91, 100, 245 N.E.2d 771; *People v. Naujokas* (1962), 25 Ill.2d 32, 38, 182 N.E.2d 700; *People v. Ewell* (1972), 5 Ill.App.3d 443, 449, 283 N.E.2d 497). Unlike *People v. Weinstein* (1966), 35 Ill.2d 467, 220 N.E.2d 432, relied on by defendant, where the court reversed the defendant's conviction because the prosecutor repeatedly told the jury that defendant must establish her innocence beyond a reasonable doubt, this case is not a close one built on circumstantial evidence. Although the remarks were not substantially prejudicial, thereby preventing us from reversing and remanding this case for a new trial, we believe that they were in extremely bad taste and merit further discussion in light of recent developments of the law by our Supreme Court.

Five instances of error occurred. In the first, Mr. Corsentino stated to the jury that defendant was not required by law to present a defense because the State had the burden of proving him guilty beyond

a reasonable doubt. There is nothing wrong with this statement, but he then proceeded to say that, since defendant did take the stand in his own behalf, he must have done so only because he and his attorneys knew that the State had successfully proven him guilty beyond a reasonable doubt. This was tantamount to telling the jury that defendants in criminal trials take the stand only because they know they will be found guilty by a jury if they do not. Such a statement places a defendant in the untenable position of being "damned if he does and damned if he doesn't" take the stand since the statement implies that once a defendant takes the stand he has acknowledged that the State has proven its case and now he must overcome a presumption of guilt and prove his innocence. This is manifestly unfair to a defendant. It has long been the rule in Illinois,

> "that a defendant is entitled to the benefit of the presumption of innocence through all steps of his trial, including the period during which the jury is considering all the evidence after receiving instructions by the court, and until the jurors determine from such evidence that guilt has been established * * *. (*Flynn v. People*, 222 Ill. 303; *People v. Ambach*, 247 Ill. 451; *People v. Israel*, 269 Ill. 284; *People v. Bermingham*, 301 Ill. 513.)" (*People v. Long* (1950), 407 Ill. 210, 213, 95 N.E.2d 461).

Therefore, the prosecutor's comment was improper.

■■ Second, Mr. Corsentino stated that defendant had lied in his testimony. This was improper since it was merely an expression of his opinion. The rule is that it is improper for the prosecutor to state his opinion respecting a defendant's guilt unless he states, or it is apparent, that his opinion is based solely on the evidence (*People v. Jackson* (1966), 35 Ill.2d 162, 171, 220 N E.2d 229, c't'ng wi*th* approval *People v. Williams* (1962), 26 Ill.2d 190, 193, 186 N.E.2d 353). Such was not the case here.

In the third instance, Mr. Corsentino stated to the jury that defense counsel had lied to them and that counsel had tried to create a reasonable doubt in their minds respecting defendant's guilt "by confusion, indecision, and misrepresentation." These comments were improper. The rule in Illinois is that it is improper to argue to the jury that defense counsel resorted to trickery to free his client (*People v. Savage* (1934), 358 Ill. 518, 522, 193 N.E. 470; *People v. Freedman* (1954), 4 Ill.8d 414, 422, 123 N.E.2d 317; *People v. Stewart* (1973), 12 Ill.App.3d 226, 231, 297 N.E.2d 391). Such commentary serves only to arouse the passions of the jury against a defendant and his counsel. It does not serve the interests of justice.

Fourth, Mr. Corsentino stated that even the trial judge knew that the defendant was guilty. We note that there was prompt objection which

was sustained by the trial court and the jury was ordered to disregard the comment. This remark by Mr. Corsentino was grossly improper.

■■ In the fifth instance, Mr. Corsentino stated to the jury that, while defendant had no prior criminal record, this was only because he was a "pretty smart cookie" who never got caught before. This too was improper since the comment suggested that defendant was an habitual criminal. It is improper for a prosecutor to comment on prior unrelated convictions of an accused (*People v. Scott* (1968), 100 Ill.App.2d 473, 478-479, 241 N.E.2d 579). We think it is even more improper to suggest to the jury that a defendant is an habitual criminal where there is no evidence to support such a suggestion. Indeed, it is improper for the prosecutor to make statements to the jury concerning facts totally unsupported by the record (*People v. Rothe* (1934), 358 Ill. 52, 56, 192 N.E. 777; *People v. Bitakis* (1972), 8 Ill.App.3d 103, 108, 289 N.E.2d 256). Such statements serve only to arouse and inflame the jury's passions against the defendant.

Each of the five remarks was grossly improper. We condemn them. Mr. Corsentino far exceeded the boundaries of permissible commentary. He would be well advised to remember that every defendant, regardless of the nature of the proof against him, is entitled to a fair trial (*People v. Stock* (1974), 56 Ill.2d 461, 472, 309 N.E.2d 19; *People v. Savage* (1934), 358 Ill. 518, 522, 193 N.E. 470). It is one thing for a prosecutor to get caught up in the heat of battle and make a mistake. It is quite another to repeatedly transgress the bounds of decency and fair play. The law expects more and indeed demands more from one who is trained in the law and who represents the People in a criminal prosecution. In *People v. Butler* (1974), 58 Ill.2d 45, 51-52, our supreme court has recently said:

> "While we do not reverse the judgment in this case because of the erroneous cross-examination earlier discussed, we are seriously concerned with the frequently of similar conduct by both prosecution and defense counsel appearing in the transcripts of trial proceedings. While we are aware that there are many evidentiary questions of relevancy and propriety that are not clear-cut and that mistakes by counsel are inevitable, it would appear that the prosecution in this case deliberately engaged in improper questioning in regard to defendant's living arrangements with women to whom he was not wed, the only apparent purpose of which was to establish, by impermissible methods, defendant's bad moral character. Similar but perhaps more reprehensible conduct has appeared in other cases in which questions implying unfavorable conduct by a witness are asked by counsel who appar-

ently have not a shred of evidence to suggest such conduct has actually occurred, but who inquire of the witness regarding it seemingly in the hope that the witness will be damaged in the eyes of the jurors. Such tactics have no place in the search for truth which is the objective of cross-examination and of the trial itself. While we are reluctant to reverse judgments where such improprieties seem not to have affected the verdicts, our prior criticisms seem to have had little effect so long as the judgments are not reversed. *Consequently, we have concluded that disciplinary action against offending counsel may be the only effective deterrent. So that counsel may be forewarned, we here announce our intention, in reviewing future trials, to refer to the Disciplinary Commission for appropriate action those members of the bar responsible for conduct of the type herein referred to.*" (Emphasis ours.)

Affirmed.

EGAN, P. J., and GOLDBERG, J., concur.