(No. 21010.
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. JOHN KOWALSKI, Plaintiff in Error.

*Opinion filed February 19, 1932.*

JOHN ELLIOTT BYRNE, and GERALD T. WILEY, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and HENRY T. CHACE, JR., of counsel,) for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

A jury in the criminal court of Cook county found John Kowalski guilty of the robbery of $26 from Tony Jovanovich, the former at the time being armed with a dangerous weapon. Kowalski was sentenced to the penitentiary and prosecutes this writ of error for a review of the record.

On October 4, 1930, Tom Balich and Anna Balich, his wife, conducted a grocery store and meat market at 6079

West Seventy-fifth street, in the village of Summit, in Cook county. Balich and his wife, with their infant son and Tony Jovanovich, a lodger, occupied rooms to the rear of the store. At about 10:15 o'clock that evening, Mrs. Balich, in response to a knock on the rear door, admitted John Zarco and another person identified by certain witnesses as Edward Walters. Balich was in the bath-room and Jovanovich and the child had retired for the night. The person said to be Walters, armed with a revolver, went to Jovanovich's room and took $26 from his trousers. Zarco, at the same time, demanded that Balich open the bath-room door. When the door was opened, Zarco pointed a revolver at Balich and forced him to produce his money. Zarco took about $700 from a sugar box in the pantry and $50 from the cash register in the store. He returned to the pantry and took Balich's revolver. The two robbers then locked Balich and his wife, their child and Jovanovich in the bath-room and departed.

The evidence introduced by the prosecution further showed that nearly four hours later Michael Foran, captain of police, three other police officers and Balich went to the home of Nick Tokich in the village of Summit and found Zarco and the plaintiff in error there; that Balich identified Zarco as the man who took his money; that Captain Foran searched both men but neither of them had a gun; that the same officer took $32 from the plaintiff in error who insisted that the money was his own and demanded its immediate return, and that the officers then took Tokich, Zarco and the plaintiff in error to the police station. Captain Foran testified that the plaintiff in error would not confess participation in the robbery, but after he had been put in and taken out of a cell a number of times during an hour and a half, he admitted that he had driven the car; that he had furnished the two guns used in committing the crime and that his share of the proceeds of the robbery was $140 of which he gave his mother $100.

The captain of police further testified that the plaintiff in error told him the guns were hidden in an abandoned automobile in Tokich's yard; that another officer found them there and that on the evening following the robbery the witness talked to the mother of the plaintiff in error and obtained $100 from her.

Balich and his wife and Jovanovich testified that they neither saw nor heard the plaintiff in error on the evening the robbery was committed. Jovanovich had been acquainted with him for several years. Sam Herzog, the police magistrate of the village of Summit, testified that Zarco, Walters and the plaintiff in error were brought before him on October 6, 1930, charged with the offense of robbery with a gun; that they pleaded guilty and that he held them to the grand jury.

Several witnesses were called by the defense. Zarco testified that he robbed Balich of his money on the evening of October 4, 1930; that he was accompanied by one Sandowski and not by Walters; that he was acquainted with Tokich and went to his house about 11:00 P. M. on the same day; that the plaintiff in error was neither present at nor had any part in the commission of the crime; that the latter never gave him a gun; that he, the witness, told the police officers where the guns used by himself and Sandowski might be found, and that the officers insisted the plaintiff in error should confess participation in the crime, but he answered that he could not do so because he was not present when it was committed and had no part in it.

Edward Walters was arrested on October 5, 1930, at about 7:00 P. M. He denied any connection with the crime and testified that on the evening of October 4, between 7:00 and 11:30 o'clock, he visited friends residing at 11850 Lafayette avenue and 114th street and Langley avenue, both in the city of Chicago, and about twelve miles distant from the scene of the robbery. Three witnesses corroborated Walters' testimony in this respect. He further testified that

he first became acquainted with Zarco and the plaintiff in error when he met them in the police station after they had been arrested to answer the present charge.

Anna Tokich and Mary Tokich, daughters of Nick Tokich, testified that the plaintiff in error had been acquainted with their father for a considerable period and had worked with him; that the plaintiff in error often called at their home and on the evening of the 4th of October, he came alone at about 8:45 o'clock; that their father had gone to a barber shop and the plaintiff in error was told that he might return at any moment; that Zarco called about 11:00 o'clock; that their father returned home shortly thereafter; that Zarco and the plaintiff in error did not engage in conversation between themselves because they were strangers to each other and that they remained in the home of the witnesses from the times they arrived until the police officers took them to the police station after midnight.

The plaintiff in error testified that he had been employed in the village of Summit; that at noon on October 4, 1930, accompanied by Tokich, he collected his wages; that during the afternoon he attended the races at Hawthorne and returned home about 6:00 o'clock; that shortly before 9:00 o'clock he called at Tokich's house; that Zarco came to the house about 11:00 o'clock; that he, the plaintiff in error, remained at Tokich's house until the police officers took Tokich, Zarco and himself to the police station about 2:00 o'clock in the morning; that the officers found $132 in his possession, and that he won this money on the races but did not remember the names of the winning horses. The plaintiff in error denied that he had driven an automobile to the place of the robbery, that he had furnished guns for that purpose, that he had told where the guns so used might be found or that he had participated in the proceeds of the robbery and had given his mother a portion of his share. He testified, on the contrary, that when he

asserted his innocence of the crime, the police officers sought, by beating him, to secure a confession of his guilt.

From the testimony of Zarco, Walters and the plaintiff in error, it appears that, at the police station, the officers struck the plaintiff in error a number of times. Zarco and the plaintiff in error added that the officers used a hose for this purpose. Captain Foran and another police officer denied that the plaintiff in error had been treated brutally while he was in their custody. Neither Zarco nor Walters heard the plaintiff in error say, when all appeared before the police magistrate, that he was guilty, and the plaintiff in error testified that he told the magistrate he was not guilty of the charge laid against him.

On cross-examination the assistant State's attorney elicited from Mary Tokich, a witness called by the plaintiff in error, the statement that she never gave the police $30 which it was said Zarco and the plaintiff in error had left at her house. On rebuttal, Martin Hayes, a police officer, testified in behalf of the People that Mary Tokich told the officers at the station that if one of them would go to the house with her she would get the $30 which her father had received from Zarco and the plaintiff in error, and that he accompanied her to the house and was given three ten-dollar bills.

Several grounds are urged by the plaintiff in error for a reversal of the judgment, but only two respecting the admission of evidence need to be considered. The testimony of police officer Foran that he called on the mother of the plaintiff in error and obtained $100 from her, it is argued, was inadmissible and prejudicial. The present charge is that Jovanovich was robbed of $26. The prosecution's evidence shows that a person said to be Walters robbed Jovanovich of that sum, and that the plaintiff in error was not present when the offense was committed. Even if, without being present, he aided or abetted the perpetration of the crime, the possession and surrender by his mother of $100 to the

police officer would hardly tend to prove the plaintiff in error guilty of robbing Jovanovich of $26. It would, however, lead the jury to believe that he had participated in the robbery of Balich, from whom a much larger sum of money was taken. The plaintiff in error was not called upon to answer that charge and the testimony was necessarily prejudicial and should have been excluded.

The testimony of officer Hayes on rebuttal, that Mary Tokich said she would refund $30 which her father had received from Zarco and the plaintiff in error, it is further insisted, was incompetent and highly prejudicial to the plaintiff in error. The statement by Mary Tokich that she never gave the police $30 which it was claimed had been left at her home by Zarco and the plaintiff in error was first elicited on the cross-examination of the witness by the assistant State's attorney. No reference to the subject matter of the statement had been made on the direct examination. Even if the State could have been permitted to impeach the witness with respect to the particular statement, no foundation was laid for such a course. The testimony of officer Hayes on rebuttal that Mary Tokich said she would get the money which her father had received from Zarco and the plaintiff in error was made in the absence of the latter and could not be binding upon him. (*People* v. *Newbold*, 260 Ill. 196). The officer did not know whether the plaintiff in error left any money with Tokich and his testimony was mere hearsay. (*People* v. *Redola*, 300 Ill. 392). Its effect was to impress the jury that the plaintiff in error had joined Zarco, the confessed robber, in the latter's criminal enterprise, and in such a situation, the jury could not be expected to give much, if any, credit to the testimony of the plaintiff in error. The latter had the right to have the jury consider his testimony free from such a handicap.

The judgment of the criminal court is reversed and the cause is remanded to that court.

*Reversed and remanded.*