People of the State of Illinois, Plaintiff-Appellee, v. Ivory Cuttley, (Impleaded), Defendant-Appellant.

Gen. No. 51,101.

First District, First Division.

April 17, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Morton Friedman, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

A jury found defendant guilty of robbery, and he was sentenced to 4 to 12 years. On appeal, he contends he was not proved guilty beyond a reasonable doubt and his constitutional rights were violated when the State was allowed to present to the jury evidence of defendant's prior convictions.

On April 26, 1965, at 1:30 a. m., Robert Lea, a cabdriver, was robbed by two men. Shortly thereafter, while at a police station, he identified defendant as one of the robbers, and later identified defendant in a lineup. The cabdriver and a police officer testified that defendant admitted his guilt. Defendant denied the robbery or any admissions.

At the trial, Lea, the cabdriver, identified defendant in the courtroom. Lea testified that defendant and Hosea Johnson entered his cab, and after being driven around, they robbed him of $41. Defendant Cuttley "put a knife on my neck . . . the blade was open." After the robbery, Lea jumped out of the cab, and "Cuttley was chasing me.

I was getting a little distance between us so I snatched a picket off a fence . . . and I turned on him and he turned and they ran through an alley, between Lawndale and Ridgeway." He lost sight of them and reported the matter to a passing police car.

Later that morning, and at a police station, defendant Cuttley was brought in, and Lea said, "That's the guy right there that stuck me up." While in the presence of the arresting officers, defendant Cuttley asked Lea for a cigarette and Lea gave him a whole package, and "I told him that if he had asked me for some money I would have given him some money. That he didn't have to stick me up. He said, 'Well, I didn't hurt you, did I,' and that's all he said, that's all I heard him say." Later, at 11th and State Street, Lea saw Cuttley and Johnson in a lineup. This was the first time he saw Johnson after the robbery. Present were Officers Alford and Morley, and "Cuttley was accusing Johnson of having the knife and Johnson was accusing Cuttley of having the knife. I can't remember the exact words of the conversation."

James Alford, a police officer, testified for the State and identified Cuttley and substantially corroborated Lea's testimony as to the happening at the police station. He heard Lea ask, " 'Why did you rob me?' He said, 'If you wanted some money why didn't you ask for it.' He said, 'I know what it is like not to have any money, and I would have given you some money had you asked for it.' And at that time the defendant asked Mr. Lea for a cigarette and Mr. Lea gave him a pack of cigarettes and then the defendant said, 'Well, I didn't hurt you, did I?' "

Officer Alford further testified that he had arrested Hosea Johnson on information given him by Cuttley, and at 11th and State Cuttley and Johnson accused each other of having or holding the knife. After Lea left the police station, and in the presence of Detective Morley and Johnson, Officer Alford asked Cuttley why he committed

323

the robbery, and "he stated that he wanted to get some money to purchase an automobile."

On cross-examination, Officer Alford stated that he did not get a written statement from Cuttley, and "I never wrote down any of the admissions he made."

Defendant Cuttley testified and denied the robbery or any admissions. He was arrested by Officer Alford and interrogated about a shotgun. He was taken to the police station, where he saw Lea, the cabdriver, who said nothing. Later Cuttley asked Alford for a cigarette, and the cabdriver gave him a package and said, " 'I am giving you this package because you robbed me.' I said, 'I didn't rob you, mister, you know.' So he said, 'You put a knife on me.' I didn't know what he was talking about. I accepted the pack of cigarettes from him. I really did. I never said to him, 'I didn't hurt you, did I?' " Cuttley denied saying to Officer Alford that he would "beat this case in court," and on cross-examination said, "[H]e was asking me did I rob him and I told him no, I did not rob him. So the detective told me, he said, 'If you did rob him,' he said, 'You should have robbed him,' and I asked him why. . . . that is when he said, 'I will see to it that you get ten years.' "

In rebuttal, Robert Lea and James Alford testified that Alford never told defendant he was going to get ten years. Officer Thomas Morley also testified in rebuttal that "I was present at 1121 South State Street at a lineup. I had never heard the detective tell the defendant that he should have done the robbery anyway because he was going to get ten years anyway."

Defendant's first contention is that during the trial, oral confessions were admitted in violation of section 114–10 (Ill Rev Stats, c 38), and except for the improperly admitted evidence, the State's case was based on a single identification, which was inherently weak.

The record shows that on December 13, 1965, after prospective jurors were sworn for examination upon their

324

voir dire and placed in the jury box, the court recessed further questioning of the jury until 2:00 p. m. of the same day. At two o'clock, and before the questioning of the prospective jurors was resumed, the State asked leave "to amend its list of witnesses of those persons present at the time of an oral statement by the defendant, Ivory Cuttley, and the defendant, Hosea Johnson," and stated to the court, "Prior to trial counsel for the defense moved for a list of witnesses and also for the list of persons present at the time of written and oral statements. At that time we advised the defense in writing of the witnesses to be called at the trial. We advised the defense that there was no written statement by either defendant in this indictment, and we advised the defense as to both defendants Mr. Robert Lea and Detective James Alford were present at the time of oral statements. . . . and it just came to our attention over the noon recess that Detective Morley was present at the time of oral statements to Mr. Lea and Detective Alford. And we had no knowledge of this fact until about half an hour ago, and we will have Detective Morley available at this time, any time today or tomorrow morning for the defense, if they wish, to interview him. We ask at this time before the trial is commenced to amend the list to include his name."

Counsel for the defendant objected to the amendment. The court allowed the motion and offered defense counsel any time necessary to interview the person added. After discussion, the court offered to allow a motion for mistrial if counsel for defendant made it. Another recess was taken, after which counsel for defendant stated: "Let the record show I have spoken to Detective Morley and I still object to the inclusion of his name, but we are ready to proceed." The examination of the jury then proceeded until twelve jurors were accepted by both sides and sworn to try the issues.

██ As to the amendment of the list of witnesses and the receipt in evidence of the testimony of Lea and

Officer Alford of the oral admissions of defendant Cuttley, we find that the provisions of sections 114–9 and 114–10 were complied with. Although we believe the provisions of section 114–10(c) applied to the testimony of Officer Morley, we note that he was called only in rebuttal and then was not questioned about any admissions of defendant. We find no error in the procedure followed by the court in permitting the amendment to the list of witnesses or in the receipt of the testimony of Lea and Officer Alford regarding the oral admissions of defendant.

█ █ We find no merit in defendant's contention that his identification was weak. Lea's testimony shows an extended exposure to the defendant during the robbery, followed by an immediate identification at the station. The alleged oral admissions of defendant to Lea buttressed the identification, but the previous identification was positive and based on sufficient happenings. A single positive identification by a credible witness is sufficient for conviction.

Defendant next contends that "the admission of evidence of defendant's prior criminal record deprived defendant of his constitutional right to a fair trial." After the State rested and after the court had been informed that it was the intention of defendant to testify, a discussion was had between court and counsel of the State's desire to introduce in evidence, after the defendant testified, proof of three prior felony convictions, of which one was a Cook County conviction. Over the objection of defendant, the court gave permission to the State to advise the jury "that the defendant Ivory Cuttley has been previously convicted of a felony, to-wit, robbery, and that the jury may consider this fact for the purpose of judging and weighing the credibility of the defendant, and for that purpose only." This was done, and the jury was so instructed.

Defendant argues that "evidence of defendant's prior criminal record is deemed by the courts to be so preju-

dicial that it violates defendant's right to a fair trial."
Citations on this point include People v. Gregory, 22 Ill2d
601, 177 NE2d 120 (1961), where it is said (p 603):

"Under our concepts of a fair and impartial crimi-
nal trial, it is elementary that a defendant, no matter
how reprehensible his crime or how black his history
of past misdeeds, is entitled to have his guilt or
innocence determined solely with reference to the
crime with which he is charged. Accordingly, it is
well settled that evidence of other offenses unrelated
to the crime for which a defendant is on trial is
incompetent. And where such irrelevant material
is contained in an otherwise competent statement or
confession, it must be deleted before the statement or
confession is read to the jury, unless to do so would
seriously impair its evidentiary value."

In United States v. Banmiller, 310 F2d 720 (1962),
where the court discussed whether it was possible for a
jury to consider evidence of the defendant's prior con-
viction for certain purposes and still not be so prejudiced
against defendant as to prevent a fair determination of
his guilt, it is said:

"Certainly such a feat of psychological wizardry
verges on the impossible even for berobed judges. It
is not reasonable to suppose that it could have been
accomplished by twelve laymen brought together as
a jury."

Defendant further argues, "The Courts have constantly
held that the State cannot by indirection, present to a
jury evidence which is improper for the State to present
directly. People v. Pelkola, 19 Ill2d 156, 166 NE2d 54;
People v. Tunstall, 17 Ill2d 160, 161 NE2d 300. In the
area of prior convictions of the defendant, it is improper
to present to the jury evidence demonstrating defendant's
general propensity to commit crime. To do so is to deny

327

defendant's constitutional right to a fair trial. To allow the State, under the guise of some rule based on history, to do indirectly, what they are not allowed to do directly, does not make the trial any less unfair. Under the Due Process Clause and the Sixth Amendment of the Federal Constitution as well as under Article II of the Constitution of the State of Illinois, an accused in a criminal prosecution is accorded, and indeed guaranteed, the right to a fair and impartial trial. Jurymen cannot be impartial when the fact that the accused has been previously convicted for the same crime is formally disclosed to them at this trial's outset."

As to this contention, the State argues, "Here, the stipulated evidence of defendant's prior conviction was introduced in rebuttal consonant with statutory and case law. . . . No prejudice was suffered by defendant."

■ The introduction of the record of conviction of an infamous crime for the purpose of affecting the credibility of such a witness is authorized by the Evidence Act (Ill Rev Stats, c 51, § 1) and by the "Code of Criminal Procedure of 1963" (c 38, § 155–1). See, also, People v. Schanda, 352 Ill 36, 185 NE 183 (1933) ; People v. Buford, 396 Ill 158, 161, 71 NE2d 340 (1947). The record here and the law on this point show that the action in the trial court was proper and, therefore, we find no error.

We conclude that this record shows that the defendant was given a fair trial under the law and proved guilty beyond a reasonable doubt. Therefore, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

BURMAN and ADESKO, JJ., concur.