People of the State of Illinois, Appellee, v. Samuel Gilmore, Appellant.

Gen. No. 54,129.

First District, Fourth Division.

December 17, 1969.

101

Sam Adam and Edward Marvin Genson, of Chicago, for appellant.

William J. Scott, Attorney General of State of Illinois, of Springfield (James B. Zagel, Assistant Attorney General, Edward V. Hanrahan, State's Attorney of Cook County, of Chicago, Elmer C. Kissane and Michael D. Stevenson, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

Defendant appeals from his conviction for murder. He was found guilty by a jury and was sentenced to a term of fourteen to seventeen years. Defendant first appealed to the Illinois Supreme Court contending that the introduction of records of prior convictions for impeachment purposes violated his constitutional rights and that the prosecution's final argument was unfair and prejudicial. The Illinois Supreme Court found that "[n]either claim presents a substantial constitutional question, and on the Court's own motion the cause is transferred to the Appellate Court for the First District."

The defendant raises these same points on appeal in this court.

The defendant does not challenge the sufficiency of the evidence, and the facts may be briefly summarized. On October 18, 1965, at approximately 10:00 p. m. in the vicinity of Leavitt and Madison Streets in Chicago, Willie Harris was shot and killed by the defendant. Joe Lewis Phillips, a cousin of the deceased, was an eyewitness to the event. He observed the deceased drinking while he waited for him in his car. The defendant and a female passenger then drove up in the defendant's car. The deceased and the defendant had an argument. Ultimately the defendant shot the deceased who was unarmed and moving away from the defendant. The defendant ran to his car, but before he could pull away, the police stopped him and placed him under arrest.

Three police officers also testified for the State. One of the arresting officers found two revolvers under defendant's car, one of which was the murder weapon. He also found an open knife approximately five or seven minutes after the shooting, lying on the curb fifteen feet from the deceased. Between the deceased and where the knife was found is a paper stand. A crowd had gathered after the shooting. The wife of the deceased testified that this was not her husband's knife.

A second police officer testified that when he arrived upon the scene, he observed Harris lying face down holding a lighted cigarette in his right hand. He took the cigarette out of his hand so he wouldn't burn himself.

The third officer was present at the hospital where Harris was taken after the shooting. He observed a nurse remove a closed knife from a pocket of the deceased's jacket. He further testified as an expert witness that one bullet was fired from the murder weapon while a second shell had misfired.

Leon Jones testified for the defense. He knew both the defendant and the deceased. On the night in question he saw the deceased standing in a restaurant located on the

corner of Leavitt and Madison arguing with the defendant. He asked the deceased to refrain and led him by the arm into the street. The deceased then pushed him into a paper stand. He did not see deceased do anything and returned to the restaurant. Both the defendant and the deceased were sober.

A police detective, testifying for the defense, stated that the defendant was a police informant. On the night in question the defendant was told to look for a specific person who was wanted by the police. The defendant subsequently notified the police upon seeing the wanted man. The defendant had been seen in the company of other city and federal police officers.

Helen Gowdy testified for the defense. She is a narcotic addict and a police informant. She had used narcotics on the morning of October 18. She heard the deceased accuse the defendant of informing on his friend. The deceased was the aggressor in the argument and was threatening the defendant with a knife before the defendant shot him.

The defendant testified that he had provided information leading to the arrest of the deceased's friend and that the deceased had demanded bond money for his partner. When he refused to provide the money, the deceased threatened him with a knife. He shouted a warning but the deceased continued to advance with the knife in his hand. He finally shot the deceased. He denied attempting to shoot the deceased twice.

On rebuttal the State offered into evidence the defendant's 1953 conviction for "armed robbery" and his 1954 conviction for the sale of narcotics. These were introduced for the purpose of impeaching the defendant's credibility.

■ ■ The defendant contends that the court erred in allowing evidence of defendant's prior convictions to be presented to the jury. When the defendant elects to take the stand to testify, he will be treated like any

other witness, and a prior conviction may be properly used for impeachment of his credibility. People v. Williams, 17 Ill2d 193, 161 NE2d 295; People v. Lacey, 24 Ill2d 607, 182 NE2d 730; and People v. Wright, 72 Ill App2d 150, 218 NE2d 798. There is also a statutory provision authorizing the State to introduce a defendant's prior conviction into evidence for the purpose of his impeachment. Ill Rev Stats 1965, c 38, § 155–1:

No person shall be disqualified as a witness in any criminal case or proceeding by reason of his interest in the event of the same, as a party or otherwise, or by reason of his having been convicted of any crime; but such interest or conviction may be shown for the purpose of affecting his credibility.

The defendant argues that this statute vests the trial court with the discretion to exclude prior convictions and that the trial court abused its discretion in this case. The defendant cites Luck v. United States, 348 F2d 763, to support this contention. In Luck the court determined that the word "may" in the District of Columbia statute gave the trial court the discretion whether or not to admit evidence of prior convictions.

In State v. Hawthorne, 49 NJ 130, 228 A2d 682, the New Jersey Supreme Court discussed the use of the word "may" as it appeared in their impeachment-of-witness statute. (It should be noted that the New Jersey statute is substantially the same as ours.) In Hawthorne, supra, 684, the court said:

Thus, the "may" in the statute does not bespeak a grant of permission or discretion to the trial judge to receive or reject the proof. On the contrary, the parties are invested with the option and if it is exercised the examination must be allowed or the record of conviction received when offered.

The trial judge cited Luck v. United States, 121 US App DC 151, 348 F2d 763 (DC App 1965), in

support of his view as to the import of the New Jersey statute. The District of Columbia code is substantially the same as ours, saying that the fact of a witness's conviction of crime "may be given in evidence to affect his credit as a witness." The Court of Appeals declared that the word "may" leaves room for the exercise of judicial discretion respecting the admissibility of a prior conviction of a defendant. We consider that construction strained and not justified by the context of the statute.

Since the presentation of evidence to show an interest or prior conviction is the responsibility of the parties and not of the court, we too hold that "may" does not grant discretion to the court to receive or reject the proof of a prior conviction. When properly presented it is mandatory that the court receive evidence of defendant's prior conviction.

The defendant next argues that it is fundamentally unfair "to require a defendant to present evidence of his affirmative defense of self-defense, and then use his prior conviction to impeach his credibility." However, in the instant case the defendant's testimony was not essential to establish his defense since Helen Gowdy testified that the deceased was the aggressor and came at the defendant with a knife. The defendant voluntarily testified in his own behalf, and like that of any other witness his credibility could be impeached by the use of prior convictions for infamous crimes.

The defendant next asserts that the jury was not capable of considering the introduction of his prior convictions solely for impeachment purposes. The State's Instruction 5 admonished the jury that defendant's prior convictions were to be considered by them only for the purpose of affecting his credibility. In People v. Cuttley, 82 Ill App2d 321, 226 NE2d 479, a similar jury instruction was given and the defendant claimed that "evidence of defendant's prior criminal record is deemed by

the courts to be so prejudicial that it violates defendant's right to a fair trial." The court, at page 328, found that:

The introduction of the record of conviction of an infamous crime for the purpose of affecting the credibility of such a witness is authorized by the Evidence Act (Ill Rev Stats, c 51, § 1) and by the "Code of Criminal Procedure of 1963" (c 38, § 155–1). See, also, People v. Schanda, 352 Ill 36, 185 NE 183 (1933); People v. Buford, 396 Ill 158, 161, 71 NE2d 340 (1947). The record here and the law on this point show that the action in the trial court was proper and, therefore, we find no error.

██ The defendant also argues that the introduction of his prior conviction for "armed robbery" rather than "robbery" should be considered as reversible error. At trial the State introduced into evidence two certified copies of defendant's previous convictions, one for the sale of narcotics and the other for "armed robbery." The defendant, through his attorney, immediately informed the court that he had been convicted for "robbery" and not "armed robbery" but offered no proof thereof. In his post-trial motion the defendant moved for a new trial on the ground that the record of conviction for "armed robbery" was erroneous and prejudicial. He attached a corrected record which showed that defendant was actually charged and found guilty of "robbery." The court properly denied this motion. The sole purpose for the introduction of defendant's prior convictions was to affect his credibility and not to establish his guilt. Therefore, we find no prejudicial error requiring a reversal of defendant's conviction because of the State's introduction of a conviction for "armed robbery" when the corrected record showed a conviction of "robbery."

The defendant also argues that the introduction of his prior convictions should have been excluded on the ground of remoteness. The defendant relies upon People

107

v. Henneman, 323 Ill App 124, 54 NE2d 745, and State v. Hawthorne, 90 NJ Super 545, 218 A2d 430, where the courts disallowed the introduction of prior convictions as being too remote. (Ten years in Henneman and twenty years in Hawthorne.) In People v. Brown, 69 Ill App2d 212, 218, 215 NE2d 812, the court discussed this same argument:

> "The defendant also argues that the trial court erred in admitting evidence of his prior convictions of infamous crimes because they were too remote in point of time. In support of this contention he cites People v. Henneman, 323 Ill App 124, 54 NE2d 745 (1st Dist 1944). In Henneman, the court held that it was error to admit into evidence the record of defendant's conviction 21 years previously, for a crime committed when he was 18 years of age.

> "Since the date of the opinion in Henneman, the Supreme Court has decided this question adversely to defendant in the case of The People v. Buford, 396 Ill 158, 71 NE2d 340 (1947). At page 162 the court stated:

>> " 'It is next contended that the record of prior conviction should not have been introduced because it was too remote in point of time, . . . . The introduction of such record of conviction for the purpose of affecting the credibility of a witness, or the defendant who has voluntarily testified, is provided for by statute. The statute fixes no limitation as to the time of such previous conviction. (Ill Rev Stats 1945, c 38, par 734, p 1271.) This contention cannot be sustained.' "

Again, in People v. Smith, 90 Ill App2d 310, 234 NE2d 31, the court found that the introduction of a prior conviction some twenty years earlier was not too remote.

The Hawthorne decision relied upon by defendant was reversed and remanded by the New Jersey Supreme Court in State v. Hawthorne, 49 NJ 130, 228 A2d 682. The court found that the motion to suppress the introduction of defendant's conviction twenty years prior to the current trial should not have been granted. The court cites People v. Buford, 396 Ill 158, 71 NE2d 340, in support of its finding.

We believe that the court in the instant case properly allowed the State to introduce the defendant's prior convictions into evidence for the purpose of impeaching his credibility.

It is also argued by the defendant that the prosecution's denunciation of him as a murderer during closing argument was reversible error. He cites People v. Kirkendoll, 415 Ill 404, 114 NE2d 459, and People v. Fort, 14 Ill2d 491, 153 NE2d 26. However, in both of these cases the prosecutor referred to prior crimes not disclosed by the evidence.

 In People v. Lindsay, 412 Ill 472, 107 NE2d 614, the defendants were convicted of murder and contended that the prejudicial argument of the prosecutor deprived them of a fair trial. The court, at page 484, found that:

> While it is improper for the prosecutor to make statements the only effect of which is to inflame the passions or develop the prejudices of the jury without throwing any light upon the issues, he nevertheless has a right to denounce a defendant as guilty of the crime charged if the evidence fairly tends to prove his guilt, and to draw inferences unfavorable to defendant if based on the evidence. (People v. Reed, 333 Ill 397; People v. Anderson, 403 Ill 128.)

See also People v. Halteman, 10 Ill2d 74, 139 NE2d 286.

We find no reversible error in this portion of the State's argument to the jury.

109

Defendant also claims that the State's entire closing argument was vicious, misleading and intentionally calculated to inflame the passions of the jury and thus irrevocably prejudiced the defendant. In People v. Wilson, 116 Ill App2d 205, 253 NE2d 472, the court stated:

> It is impractical to lay definite guidelines for what may and what may not be said in argument to a jury. People v. Jenko, 410 Ill 478, 102 NE2d 783. What impropriety in jury argument will constitute ground for reversal depends on the language used and the circumstances of its use. A judgment will be reversed only when it is clear that improper remarks in argument influenced the jury in a manner substantially prejudicial to the accused. People v. Stahl, 26 Ill2d 403, 186 NE2d 349; People v. Allen, 17 Ill2d 55, 160 NE2d 818.

After a careful review of the several incidents mentioned by the defendant concerning the prosecution's closing argument, we are of the opinion that they were based upon the evidence presented to the jury and from legitimate inferences drawn from this evidence. They do not require a reversal of the judgment.

The judgment is affirmed.

Affirmed.

ENGLISH and LEIGHTON, JJ., concur.