**UNITED STATES of America, Appellee,**

v.

**Howard J. COTTER, Defendant, Appellant.**

**No. 7484.**

United States Court of Appeals, First Circuit.

Heard April 6, 1970.

Decided May 1, 1970.

Francis J. DiMento, Boston, Mass., with whom Richard M. Howland and DiMento & Sullivan, Boston, Mass., were on brief, for appellant.

Richard B. Buhrman, Atty., Dept. of Justice, with whom Johnnie M. Walters, Asst. Atty. Gen., Joseph M. Howard, Atty., Dept. of Justice, and Herbert F. Travers, Jr., U. S. Atty., were on brief, for appellee.

Before ALDRICH, Chief Judge, and COFFIN, Circuit Judge.

ALDRICH, Chief Judge.

The defendant Cotter, an employee of the Welfare Department of Springfield, Massachusetts and a lawyer engaged with an associate, one Mitchell, in the practice of law, was tried for income tax violations. Count 1 was for filing a willfully false return for the year 1961, in violation of 26 U.S.C. § 7201, Count 2 for the willful failure to file his 1962 return when due, in violation of 26 U.S.C. § 7203. He was found not guilty by a jury on Count 1, and guilty on Count 2. Following sentencing, he appeals.

The evidence established that the defendant's 1962 return was filed in August 1965. Accompanying it was a statement to the effect that the delay was due to the fact that a substantial part of his income came from his associate whose records had not become available until his death three months before. Although defendant did not take the stand, his defense was an attempt to substantiate that excuse, coupled with an attempt to show, on the issue of willfulness, that he had started to prepare his return before he was investigated.

We have rarely, if ever, been treated to a flimsier defense. To begin with the second point, if it is in any way relevant, it is true that defendant hired an accountant to work on his 1962 return shortly after Mitchell died in May 1965, which was before the Service investigated him. On the other hand, shortly before Mitchell's death the Service had interviewed the defendant about Mitchell, and had learned that Mitchell shared his fees on a 50/50 basis with the defendant. The defendant could not help but know that his turn was next.

As to the alleged unavailability of Mitchell's books, they were in the custody of the office secretary, whose salary

was paid by the defendant, and who had a power of attorney on Mitchell's checking account. No reason for any secrecy from the defendant is suggested. The secretary testified that the defendant never asked to see Mitchell's books, nor asked her to obtain Mitchell's permission, if that were needed, to show them.

█ The defendant argues that if he had taken the stand he might have testified that he himself had asked Mitchell for permission, and that it was refused, and that for the jury to deny him the benefit of that assumption in effect would violate his Fifth Amendment rights. This is a total misconception of the amendment. The Fifth Amendment prevents the drawing of unfavorable inferences from the failure to testify; it does not prevent the drawing of affirmative inferences, or serve to rebut inferences that arise independently from other circumstances, unconnected with the defendant's failure to testify. From the nature of the relationship of the parties the jury could well infer that Mitchell would have permitted defendant to inspect his accounts had defendant requested it.

Nor can it be thought that the defendant did not know that he should file a return. He was a lawyer who had filed personal returns before. His gross 1962 income exceeded $50,000 and his tax thereon proved to exceed $10,000. Our time should not have been wasted by a claim that he was entitled to a directed acquittal.

█ We are not persuaded by defendant's attack on the indictment. The statute, 1954 Int.Rev.Code § 7203, 26 U. S.C. § 7203, provides, "Any person required * * * to make a return * * * who willfully fails to * * * make such return * * * at the time or times required by law * * * shall * * * be guilty of a misdemeanor." Defendant complains that it was insufficient for the indictment to allege that the defendant "was required by law fol-lowing the close of the calendar year 1962 and on or before April 15, 1963, to make an income tax return * * *; that well knowing all the foregoing facts, he did willfully and knowingly fail to make said income tax return * * *." Defendant's complaint is that his "failure is not alleged to have continued through April 15, 1963." We do not agree. The fair meaning of "said income tax return" is the return due on April 15, 1963. The statement that a return so described was not filed is not to be read as merely saying that it was not filed on, say, March 15.

█ Finally, defendant raises certain objections as to the government's closing argument to the jury. We will recapitulate, we hope for the last time, in the light of the number of occasions it has been necessary to do so, the basic ground rules. Essentially, the prosecutor is to argue the case. He may discuss the evidence, the warrantable inferences, the witnesses, and their credibility. He may talk about the duties of the jury, the importance of the case, and anything else that is relevant. He is not to interject his personal beliefs. The prosecutor is neither a witness, a mentor, nor a "thirteenth juror" (the ultimate in absurdity, advanced by the prosecutor in Greenberg v. United States, 1 Cir., 1960, 280 F.2d 472). He must not appeal to the passion or prejudice of the jury directly, or, by the introduction of irrelevant matter, indirectly.

█ To say that if persons do not pay their taxes there will be no moon landings is not as prejudicial as a statement that non-payment is unpatriotic. Greenberg v. United States, supra; cf. Taglianetti v. United States, 1 Cir., 1968, 398 F.2d 558, 566, aff'd 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302. Nonetheless, when the case was being tried during the episode of the first moon landing, the reference approached an appeal to passion. There is a difference between reminding jurors that the

payment of taxes is essential to the conduct of government, and selecting some single matter especially provocative of emotion. We will not find prejudicial error in this case, however, in part because the defendant's guilt was so clear that a passing remark, very possibly evoked by defendant's opening up the subject himself, could scarcely have been of important moment. We hold it within the court's discretion to permit the comment.

The prosecutor's statement that he personally believed a certain one of the inferences open to the jury on the evidence is not as serious, where it purported to be founded on the record itself, as if he had suggested that he had certain other, undisclosed facts at his disposal. Nonetheless we have long put ourselves on record as disagreeing with those circuits which permit the prosecutor to add the weight of his own—or the government's—thumb to the scales of justice quite apart from any such connotation or implication of knowledge of additional facts. *See* Patriarca v. United States, 1 Cir., 1968, 402 F.2d 314, 320–321, cert. denied 393 U.S. 1022, 89 S.Ct. 633, 21 L.Ed.2d 567. A statement that the prosecutor personally drew certain inferences is just another way of expressing his personal opinion of guilt. We would have found it prejudicial had defendant objected and the court had overruled the objection. However, this did not occur. Had defendant objected, the court might well have required its correction.

In this total situation we subscribe to the special concurrence of Judge Rives in Thompson v. United States, 5 Cir., 1959, 272 F.2d 919, 923, cert. denied 362 U.S. 940, 80 S.Ct. 805, 4 L.Ed.2d 769, and not to the rule of the majority opinion. While the argument was error, it was not plain error, and we will not hold it ground for reversal.

Affirmed.