THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM L. CHANDLER, Defendant-Appellant.

(No. 56087;

First District—September 20, 1972.

950

Edward M. Genson and Sam Adam, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Mark T. Zubor, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

The defendant, William Chandler, appeals from a judgment of the Circuit Court of Cook County entered after a finding of guilty by a jury on counts of rape and indecent liberties with a child. He was sentenced to a term of forty to seventy-five years in the Illinois State Penitentiary.

The issues on appeal are whether the verdict of guilty was against the manifest weight of the evidence, whether the court erred in refusing to allow the defendant a hearing on his motion to strike the use of his prior convictions, whether the defendant was denied his right to a jury trial when one juror was excused because of illness and the verdict was entered by eleven jurors, whether the closing argument of the prosecutor was improper, whether it was error to admit into evidence the defendant's statement to the victim's mother that "I've beat this rap before," whether the trial judge was prejudiced against the defendant and his attorney, and whether the sentence was improper and excessive.

On April 6, 1968, Nora Campbell, an eight-year-old child, and two playmates were playing in front of 422 West Evergreen in the City of Chicago. The defendant approached the children, told the two other girls to race their bicycles down the street, and then forcibly took the victim to an apartment across the street where he performed three separate acts of sexual intercourse with the child. The apartment belonged to Percy Chandler, the defendant's brother. That same night the victim was shown 200 photographs, and she identified a picture of the defendant. About a week later a police officer showed her a single, more recent photograph of the defendant, which showed him wearing the processed hairdo the victim had described to the police. She also identified that photograph.

About two months later the victim's mother saw the defendant on the street and then confronted him with a hand gun. Nora was brought to the scene, and she again identified him as her attacker. At trial Nora and her two friends identified the defendant as the man who approached them on the street on April 6, 1968.

The defendant asserted an alibi defense and several witnesses testified he was with them at the time of the assault.

■■ The defendant's first argument is that the verdict was contrary to the manifest weight of the evidence because the identification by juvenile witnesses was inconclusive and the use of photographs to make the identification was prejudicial. He asserts that the testimony of the eight year old victim indicated she had only fleeting glimpses of her attacker at times when she was crying and emotionally distraught. There can be no question that she had ample opportunity to view and identify

the defendant before, during and after the attack. She saw him when he approached her and her friends and asked them to race their bicycles. She had the opportunity to observe him during the three separate assaults, each of which lasted approximately two minutes, and finally, she observed him after the assaults took place: "He told me to go in the living room to get my clothes, and I put them on; and, when he was coming to the living room, I saw him." There was never any question that she was anything but an intelligent, competent witness.

Neither was the use of photographs in the identification procedure prejudicial. The victim was shown 200 photographs at the hospital on the same evening of the attack, and the circumstances were not suggestive as is illustrated by the following colloquy:

"Q. The men in that book, did they have processes?

A. Yes.

Q. Do you remember how many of them had processes? Were there many?

A. Yes.

Q. And did any of these processes look like the process on the man that you saw that took you?

A. It was just one, and he looked the man, [sic] but he didn't have no process."

■■ Later in the week to confirm the initial identification she was shown a single, more recent picture of the defendant, in which he had a process. The use of photographs are not condemned unless the procedure is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. (*Simmons v. United States*, 390 U.S. 377; *People v. Sutton* (1969), 110 Ill.App.2d 232; *People v. DeSavieu* (1970), 120 Ill.App.2d 45.) In the instant case the record shows the identification procedures were not suggestive.

The alibi testimony for the defendant presented a question of credibility which the jury apparently resolved against the defendant.

■■ Defendant's second contention is that the court erred in refusing to allow the motion to strike the use of his prior convictions for "indecent liberties with a minor" and "contributing to the delinquency of a minor" for impeachment in the event he took the stand. Chapter 38, Section 155—1 of the Illinois Revised Statutes provides:

"No person shall be disqualified as a witness in any criminal case or proceeding by reason of his interest in the event of the same, as a party or otherwise, or by reason of his having been convicted of any crime; but such interest or conviction may be shown for the purpose of affecting his credibility * * *."

The defendant contends the word "may" indicates the court, and not

the prosecuting attorney, has discretion to determine the probative value of the prior convictions, and the court should have ordered a hearing to determine whether the prior convictions should be used. He contends his prior convictions are not probative of his credibility and cites *People v. Montgomery* (1971), 47 Ill.2d 510, in support of that argument. However, this court has already considered the contention in *People v. McClaine* (1971), 270 N.E.2d 176, where the court said:

> "The defendant's contention is that this statute (Ill. Rev. Stat., ch. 38, sec. 155—1) vests the trial court, rather than the prosecuting attorney, with discretion to exclude prior convictions and that the trial court abused its discretion in this case. Until recently the Illinois courts have always rejected this argument. *People v. Gilmore* (1969), 118 Ill.App.2d 100, 254 N.E.2d 590. In *Gilmore*, the court said:
>
>> 'Since the presentation of evidence to show an interest or prior conviction is the responsibility of the parties and not of the court, we too hold that "may" does not grant discretion to the court to receive or reject the proof of a prior conviction. When properly presented it is mandatory that the court receive evidence of defendant's prior conviction.'
>
> In *People v. Montgomery*, Ill., 268 N.E.2d 695, decided January 25, 1971, the Supreme Court of Illinois decided the court and not the State's Attorney has the discretion as to what evidence of this nature is admissible. However, the application of this ruling is to be prospective and has no effect in this case."

The instant case was tried prior to January 25, 1971, and the court correctly applied the law in effect at that time.

██ Defendant's third argument is that he was deprived of his right to a trial by a jury of twelve of his peers in violation of his Fourteenth Amendment right of due process of law. During the trial, one of the jurors became ill and was excused. Because there were no alternates chosen, the verdict was rendered by the remaining eleven members of the jury. However, prior to the opening of the trial both sides agreed that the case could be determined by as few as ten members. After a discussion in chambers the following appears in the record:

> "THE COURT: Let the record show that both sides have agreed to go with not less than ten jurors, if necessary. Is that right?
>
> MR. McNEIL: That's correct.
>
> MR. VAN ZEYL: That's right."

The defendant contends the statement made by his attorney at trial confirming the judge's summary of the agreement is not the affirmative act

required for a jury waiver. The argument is that an agreement to proceed with not less than ten jurors should be judged by the same standards as a complete waiver to a trial by jury. A similar situation was considered by a court in the case of *Williams v. United States,* 332 F.2d 36. We agree with what the court said in that case:

> "We conclude from examining the record that petitioner was present when the oral stipulation was made and that he was also present when the agreement in regard to proceedings with less than twelve jurors was put into effect. In addition we hold that the record shows that petitioner was satisfied when the court proceeded with eleven jurors."

■■ Fourth, the defendant contends the following statement in the closing argument of the prosecutor was prejudicial:

> "So, when he talked to his counsel he is aware of the details of his case. In fact, he gave Mr. McNeil tips on how to handle the case. He knew how to handle the case because he is the man who did it * * *."

The defendant contends in his brief: "A prosecutor must not be allowed to comment on the legitimate and unassailable right of a defendant to participate in his own defense. To make the jury think that the defendant was a 'sharpie' who was trial-wise and calculating, schooled in the defense of criminal cases, prejudiced the defendant."

■ It is clear that counsel is permitted a wide latitude in making a closing argument (*People v. Johnson* (1966), 66 Ill.App.2d 465), and we conclude the remarks were not of such magnitude as to justify a reversal of the judgment of the Circuit Court. The comments complained of were merely based on the prosecutor's inherent contention that the defendant was the guilty party.

■■ The defendant also contends the prosecutor commented on his failure to take the stand by making these remarks:

> "So when he talked to his counsel he is aware of the details of this case. In fact, he gave Mr. McNeil tips on how to handle the case. He knew how to handle the case because he was there when it happened, ladies and gentlemen, because he is the man who did it. There is no question about it. There is nobody better able to give the facts except he and Nessie because they were there."

The recent case of *People v. Mills* (1968), 40 Ill.2d 4, sets forth a test for a prosecutor's remarks: whether reference was intended or calculated to direct the attention of the jury to the defendant's failure to exercise his right to testify. The context of the statement indicates the prosecutor intended to emphasize the positive nature of the identification rather than comment on the failure of the defendant to take the witness stand.

Significantly, the defendant's attorney did not object to either of the statements objected to on review; therefore, the point is waived. *People v. Jerrels* (1968), 98 Ill.App.2d 213; *People v. Donald* (1963), 29 Ill.2d 283.

██ The defendant next contends it was error to admit into evidence the alleged statement to the victim's mother that "I've beat this rap before." He argues it was error because the remark was hearsay and the prosecutor is barred from introducing evidence of the commission of another crime by the accused. Clearly, the remark was not hearsay. It was a spontaneous statement in the nature of an admission and was not introduced to prove the truth of the matter asserted, that the defendant had committed other crimes. The statement was probative of his identification as the perpetrator of the rape; therefore, allowing the statement into evidence was not error.

The defendant's next complaint is that the trial judge was prejudiced against him and his attorney. He specifically characterizes four events as being manifestations of prejudice: (1) the judge inquired of a prospective juror employed in a glue factory as to whether he was a "sniffer"; (2) the judge brought out the jury on one occasion while waiting for defendant's attorney; (3) the judge revoked and then reinstated defendant's bond because the defendant and his counsel were late for a trial session; and (4) the judge allowed the prosecution to examine prospective jurors as to their adherence to the standards of reasonable doubt but prevented such inquiry by defendant's counsel on the grounds that the subject matter had been gone over.

██ The first contention is entirely frivolous. The next three are examples of the exercise of judicial discretion. The fact that the jury waited for defense counsel on only one occasion when, in fact, he was late numerous times suggests restraint on the part of the trial judge, not prejudice. When the defendant arrived with his counsel 35 minutes late for trial, the judge first revoked and then reinstated his bond and made the following remarks to counsel outside the presence of the jury:

"I am not concerned with your taking the Court's time to find a witness. That is your business, not the business of this Court. You are retarding the business of the administration of justice in this Court by your tardiness. You have been late every day, with the exception of one. Every time we take a recess we are waiting for you."

The restriction on examining prospective jurors was only invoked when the judge determined the defense attorney was covering matters he previously covered himself. There is no question the court may impose reasonable regulations on the process of selecting jurors. (*People v.*

*Lobb* (1959), 17 Ill.2d 287; *People v. Lexow* (1962), 23 Ill.2d 541.) A reading of the record indicates the court did not abuse its discretion in any of the complained of instances.

■■ Finally, the defendant contends the sentence of 40 to 75 years for both rape and indecent liberties was improper. He complains he was sentenced for offenses which arose out of the same conduct and the two sentences could prejudice his chances for parole. The judge pronounced sentence as follows:

> "On indictment numbers 68-2444 in which you have been found guilty I sentence you to the Illinois State Penitentiary for a term of not less than 40 years and not more than 75 years."

The Common Law Record indicates the sentence was imposed on each count although the maximum statutory penalty for indecent liberties is 20 years. (Illinois Revised Statutes, Chapter 38, Section 11—4.) Clearly, the sentence was proper only for the crime of rape (Ill. Rev. Stat., ch. 38, sec. 11—1 (c) ), and convictions for crimes arising out of the same conduct are improper even when concurrent sentences are imposed. *People v. McGuirk* (1969), 106 Ill.App.2d 266; *People v. Duszkewycz* (1969), 27 Ill.2d 257.

■■ The defendant also complains the sentence for rape was excessive and should be reduced to allow a maximum opportunity for rehabilitation. We believe the trial judge understood the situation and acted prudently. Before sentencing the defendant the judge made the following remarks:

> "The ideal sentence is one which adequately punishes the offender's misconduct, safeguards the public from further offenses, and rehabilitates the defendant to be a useful member of society. You, Mr. McNeil, have brought out the third objective of the ideal sentence, that is with the rehabilitation of the offender. I am not too much impressed with his rehabiiltation, I am not too much impressed with punishing him for his misconduct. But what I am most certainly concerned about, most concerned about, is safeguarding the public from any further offenses here. His rehabilitation should be considered. Difficult as it may be whether he can be rehabilitated or not, it will be up to him whether he can or not."

The conviction and sentence for rape are affirmed. The judgment for indecent liberties is reversed.

Affirmed in part and reversed in part.

BURMAN and ADESKO, JJ., concur.