THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LOUIS MARTIN, Defendant-Appellant.

(Nos. 59234-35 cons.; )

First District (4th Division)—June 11, 1975.

James J. Doherty, Public Defender, of Chicago (James N. Gramenos, Assistant Public Defender, and Mitchell Eric Menaker, Law Student, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Raymond J. Prosser, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Louis Martin was charged in indictment 72-86 with the sale and possession of a narcotic drug on July 12, 1971, in violation of sections 22 and 23 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, §§ 22, 23), and he pled guilty to this charge. Defendant was also charged in a second two-count indictment, 72-87, with the sale and possession of a narcotic drug on July 14, 1971, in violation of sections 22 and 23 of the Code, but he entered a not-guilty plea to this charge. However, the jury returned a verdict finding defendant guilty. Defendant was sentenced to 1 to 4 years in indictment 72-86 and 3 to 9 years in indictment 72-87; the sentences were to run concurrently.

A notice of appeal was filed in both cases, but this court allowed their consolidation. The only issues raised in this appeal concern indictment 72-87. Therefore, the decision of the trial court in indictment 72-86 will be affirmed without discussion. Defendant contends in this appeal that he was denied his constitutional right to a fair trial.

On July 19, 1971, the defendant was arrested and charged with the sale and possession of narcotics on July 14, 1971. A jury trial was held and the prosecution presented one witness, Officer Terrence Markham, a undercover narcotics agent. Officer Markham testified that on July 14, 1971, at approximately 5 P.M., he received a telephone call from a special employee, Orville Parker. Parker told the officer that he could set up a heroin sale, so Officer Markham and his partner met Parker at Ohio and California Streets between 5:30 and 6 P.M. The men talked and then they proceeded in Parker's automobile to 1740 West Huron where they met Louis Martin, the defendant. The defendant was sitting on the steps, but he came over to the car and, when Parker told him that Officer

Markham was alright and was interested in purchasing some heroin, he got into the car and told Parker to drive to Crystal and Wood Streets. During the drive, Martin asked the officer what he wanted to purchase and Markham told him a $25 bag. When the men reached the northeast corner of Crystal and Wood, Martin asked the officer for the money, which he received.

Martin got out of the car, walked northbound on Wood to the alley and went eastbound. While Martin was away, Parker and Officer Markham remained in the car. Five minutes later Martin returned, got into the car and told Parker to drive him home. Martin gave Officer Markham a plastic bag during the trip, and the officer placed it in his pocket. When he reached his destination, Martin got out of the car and told Officer Markham to contact Orville Parker if he wanted to buy again and it would be no problem. Then Parker and Officer Markham proceeded from 1740 West Huron and rendezvoused with the officer's partner. Officer Markham put the packet of white powder into an envelope and signed it so his partner, Office Iosello, could deliver the package to the crime laboratory.

On cross-examination, Officer Markham was asked to explain what a special employee is since this was a term he used during direct examination. He testified that a special employee is a person who works for the Chicago Police Department. However, he indicated that Orville Parker was not directly employed by the police department since he did not receive a salary or a fee for his services. Officer Markham stated that Parker received gratification from knowing that a person who sold heroin to a relative was being stopped. In concluding Officer Markham's examination, the prosecutor and defendant's attorney stipulated that the plastic packet that Officer Markham gave to Officer Iosello contained heroin.

Orville Parker testified on behalf of the defendant that on July 14, 1971, he and Officer Markham, a narcotics agent whom he met on July 12, 1971, were in Frank and Dottie's tavern drinking beer. Parker stated that he received $20 from Officer Markham when they saw the defendant outside the tavern. Parker testified that he talked with Officer Markham and the defendant, but stated that he never discussed heroin in the officer's presence. Parker stated that he bought narcotics with the money he received from Officer Markham, and he turned the narcotics over to the officer after purchasing them. Parker, in completing his testimony, stated that Officer Markham never purchased narcotics directly from the defendant.

■■ The issue before this court is one which is fundamental to our system of justice and involves the question of whether the accused in this case was deprived of his right to a fair trial. The defendant argues

that his right to a fair trial was violated by certain improper statements in the prosecutor's closing argument. Under the due process clause and the sixth amendment to the Federal Constitution, as well as under the Constitution of the State of Illinois, an accused in a criminal prosecution is accorded, and indeed guaranteed, the right to a fair and impartial trial, (*People v. Cuttley* (1967), 82 Ill.App.2d 321, 328, 226 N.E.2d 479), and a defendant, no matter how reprehensible his crime or how black his history of past misdeeds, is entitled to have these constitutional rules applied. *People v. Gregory* (1961), 22 Ill.2d 601, 177 N.E.2d 120.

The Illinois Supreme Court reversed a conviction in *People v. Freedman* (1954), 4 Ill.2d 414, 123 N.E.2d 317, because of the improper and highly prejudicial remarks of counsel. The prosecutor in *Freedman* alleged that the defendant testified that he was intoxicated after discussing the case with his attorney and discovering that intoxication was a defense to the crime with which he was charged. Consequently, the court held that arguments of a prosecutor which charge a defendant's counsel with attempts to free his client by trickery tend to deprive the accused of a fair trial and should not be permitted.

In the instant case the evidence is close and conflicting. The evidence is close because the testimony of the State's witness, a police officer, is diametrically opposed to the testimony of defendant's witness, a special employee of the police department who set up the sale, but happens to be a drug addict. The evidence conflicts in that Officer Markham testified that he purchased heroin from the defendant for $25, while Parker testified that he personally purchased the heroin from defendant for $20. Nevertheless, the defendant alleges that the prosecutor insinuates in closing argument that his attorney is resorting to trickery by stating:

"Now Mr. Green, counsel for the defense, is no doubt trying to defend his client in any way he can. I would indicate to you he made his opening statement he talked about Orville Parker and you may recall that he had nothing good to say about Orville Parker * * *.

I would ask you to consider that possibly his [Parker's] testimony is changing perhaps in relation to asking someone's help, perhaps counsel to get out of that jail, that perhaps he would come here and tell you a story yesterday that has no relationship to the truth at all.

I would ask you to also consider the fact that as Mr. Green said, that when this witness was brought here that prior to getting on the stand and just prior to getting on the stand did Mr. Green and Orville Parker have a conversation in that conference room

and that Mr. Parker came out here and told you a story and I think you can consider that as well."

The prosecutor's closing argument suggests that defense counsel would "use any means" to free his client including suborning perjured testimony from his witness. This commentary only arouses the passions of the jury against the defendant and his counsel and does not serve the interests of justice. (*People v. Weathers* (1974), 23 Ill.App.3d 907, 914, 320 N.E.2d 442.) It is impossible to determine the effect these comments had on the deliberations of the jury, but if they did, defendant's case would be prejudiced.

■■ Next, the defendant alleges that the prosecutor's closing statement which questions the credibility of defendant's witness' testimony, while he vouches for the credibility of his own witness, denied him a fair and impartial trial. The American Bar Association's standards on the prosecution function clearly proscribe the conduct complained about by the defendant. Standard 58 provides:

"(A) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(B) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

(C) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

(D) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict."

This court took a position in accord with the ABA standards in *People v. Vasquez* (1972), 8 Ill.App.3d 679, 291 N.E.2d 5, a case where the prejudicial remarks of the prosecutor in closing argument deprived the defendant of a fair trial. The prosecutor's closing argument was improper because the argument effectively introduced unsworn testimony in lieu of competent evidence, and the prosecution compounded the error by telling the jury he was the "thirteenth juror." This flagrant self-vouching by prosecutor as the "thirteenth juror" is to be condemned, and in *United States v. Cotter* (1st Cir. 1970), 425 F.2d 450, the court states:

"He may discuss the evidence, the warrantable inferences, the witnesses, and their credibility. He may talk about the duties of

the jury, the importance of the case, and anything else that is relevant. He is not to interject his personal beliefs. The prosecutor is neither a witness, a mentor, nor a 'thirteenth juror' * * *." 425 F.2d 450, 452.

The prosecutor violated the ABA standards, although this court is not bound to follow them, by commenting on the truth or falsity of Parker's testimony. The prosecutor argued:

"I believe it would stretch your credibility to believe a narcotic addict [Parker], someone in jail for a period of time, to come up and to tell you yes, believe what I have to say. Believe me because I am telling you the truth. The reason that these persons aren't used for anything other than to arrange introductions is that they can't be trusted and I believe in your common sense you are well aware of that. That to substantiate a case that it requires the testimony of someone that can be trusted and someone that can be believed in and that is why undercover police officers [Officer Markham] themselves make these buys * * *."

The prosecutor's argument clearly violated *Vasquez*, which is binding on this court, and *Cotter*, by introducing in his closing argument his personal opinion as to the truth or falsity of the defendant's witness' testimony. He thereby invaded the province of the jury and in effect became the "thirteenth juror."

██ Similarly, in *People v. Bitakis* (1972), 8 Ill.App.3d 103, 289 N.E.2d 256, this court reversed a conviction because the comments of the prosecuting attorney were outside the record. The court held at page 106:

"* * * [T]he comments of a prosecuting attorney which are outside the record, therefore not based on evidence and issues of the trial, are improper because they are the unsworn testimony of the prosecutor. (See Annot., 81 A.L.R.2d 1240, 1248.) Particularly, it has been held improper for a prosecuting attorney to argue to a jury that both his personal and official prestige warranted the truthfulness of the People's witnesses or he would not have called them."

In the instant case the prosecutor argued as follows:

"He [Parker] was called, you will remember, not as a State's witness because the State, I believe with reasonable inference here, is that before the State would put anyone on as a witness we have to vouch for their credibility. We have to believe in what they would say. There is no way we could possibly believe in what a person like that would say."

It is clear that the prosecutor inferentially or by way of innuendo attests to the truth and veracity of his witness, the policeman, by arguing that

the defendant's witness was such a despicable character that he could not vouch for his credibility and, therefore, did not call him. This argument is a violation of *Bitakis* and, therefore, improper.

Finally, the defendant contends that the prosecutor violated an Illinois statutory prohibition, section 155–1 of the Criminal Code[1] (Ill. Rev. Stat. 1969, ch. 38, § 155—1), and *Griffin v. California* (1965), 380 U.S. 609, 14 L.Ed.2d 106, 85 S.Ct. 1229, by commenting on the failure of the defendant to take the stand. The prosecutor argued, "Parker told you all these things and yet Mr. Green is putting him on as his only witness in his case." The People argue that the preceding argument contains no direct reference to the defendant's failure to testify, nor was there any prejudice to the defendant. Moreover, the People contend if there was error it was cured by defendant's objection which was sustained by the trial court, or by the instruction to the jury that the fact that defendant did not testify should not influence their verdict. Nevertheless, the Illinois Supreme Court has reversed convictions where similar arguments were made by the prosecutor.

In *People v. Morgan* (1960), 20 Ill.2d 437, 441, 170 N.E.2d 529, a larceny case where it was alleged that the prosecutor's closing argument prejudiced the defendant's right to a fair trial, the court held that the statement, " '* * * [Morton] who you saw testify as the only witness for the defense,' " was so prejudicial that the case had to be reversed. Similarly, in *People v. Wollenberg* (1967), 37 Ill.2d 480, 488, 229 N.E.2d 490, the supreme court reversed where the prosecutor argued that, " 'No one else testified. Let's get that straight.' " The court after scrutinizing the argument points out that the underlying purpose and the ultimate effect of the prosecutor's remarks was to call attention to the defendant's failure to testify, thereby accomplishing by inference what could not be done expressly and held that the statement constituted plain error.

■■ We think that the comments by the prosecution on the failure of the accused to testify violated his constitutional privilege against self-incrimination, as well as *Griffin v. California* (1965), 380 U.S. 609, 14 L.Ed.2d 106, 85 S.Ct. 1229, and the Illinois Criminal Code. *Griffin* held that the self-incrimination clause of the fifth amendment, made applicable to the States by the fourteenth in *Malloy v. Hogan* (1964), 378 U.S. 1, 12 L.Ed.2d 653, 84 S.Ct. 1489, is violated when a prosecutor comments on the accused's silence. Illinois has manifested its interest in protecting an accused's constitutional privilege by promulgating section 155—1· of the

---

[1] "* * * [A] defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect."

Code of Criminal Procedure, and the courts have followed the lead of the legislature as evidenced by their holdings in *Morgan* and *Wollenberg*.

Although the defendant was being prosecuted for the offense of sale of narcotics on July 14, 1971, the officer was permitted to testify concerning the alleged sale of narcotics on July 12, 1971. The prosecutor in closing argument related to the jury how the defendant sold narcotics on July 12 in addition to the sale of narcotics as charged in the instant trial on July 14. This conduct has been condemned in *People v. Gregory* (1961), 22 Ill.2d 601, 177 N.E.2d 120.

Considering both the improper arguments and the evidence of unrelated crimes heard by the jury, it is our opinion that the defendant did not receive the fair and impartial trial to which he was entitled and that justice requires that he be accorded a new trial. Therefore, the judgment of conviction in indictment 72-87 is reversed and the cause is remanded for a new trial.

Reversed and remanded.

DIERINGER, P. J., and BURMAN, J., concur.