THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID PAUL PORTER, Defendant-Appellant.

(No. 74-286;

Fifth District—June 24, 1975.

Stephen P. Hurley and Michael J. Rosborough, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Bruce D. Irish and Myra J. Brown, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by the defendant, David Paul Porter, from a judgment of conviction entered on a jury verdict of guilty to the offense of armed robbery by the circuit court of Madison County and the imposition of a sentence of not less than 4 nor more than 6 years' imprisonment.

The issues raised on appeal are: (1) whether the defendant was proven guilty beyond a reasonable doubt where his conviction allegedly "turned upon the identification of only one witness, who had but a fleeting opportunity to observe the robber leaving the store"; and (2) whether "the trial court erred in precluding the defendant from eliciting testimony concerning a subsequent robbery at the same store."

The undisputed facts which gave rise to the charges in the instant case were as follows. At approximately 8:40 P.M. on February 12, 1974, the Farm Fresh Store in Alton, Illinois, was the subject of an armed robbery. The proprietor, Mrs. Geraldine Mueller, was alone in the store when a young white male with a "sock hat" entered the store, pulled out a gun, and ordered her to remove the money from the cash register and place it in a paper sack. Once the money was placed in the sack, the perpetrator ordered Geraldine Mueller to turn around, keep her head down, and stay that way for "a few minutes." Geraldine Mueller complied with these commands. She heard the door to the store open and close, and then open again a few seconds later. She looked up and saw that Lester Graham, a regular customer, had entered the store. She yelled that she had been robbed and Graham gave chase. Mildred Leonard, a store employee, entered the store a "second" after Graham had left in pursuit of the fleeing felon.

Lester Graham testified that he came to the store at approximately 9 P.M. on Friday, February 12, 1974. As the witness approached the

corner of the building a car pulled up at the other end of the building carrying Mildred Leonard, a store employee. The witness then testified:

"At this point the car drove up and someone came out the door. He came out the door and turned toward the car hesitated and turned back toward me and came this way. And as he started coming back toward me, he took about three steps and noticed me and sort of hesitated."

After he hesitated:

"He just kept coming but he speeded up and as he came out here, he made like he was going across Milton Road and turned his head to me and then came back around behind me, and as he came behind me, I turned and looked at him and he was looking at me."

The witness testified that this subject came within "[t]hree, four, [or] six feet" of him. The witness also testified that he viewed the subject's face for "About five seconds, maybe ten" in an area that was "very well lit." The witness did not know the store had been robbed at the time he viewed the subject exit from the store. The witness was able to describe the subject's clothing, "a blue stocking cap, dark pants, a blue and white navy CPO jacket" and the subject's general physical characteristics, "five, ten, had brown hair" and "a pointed chin," to the police.

Edgar McClary, an Alton police officer, testified that he observed the defendant exit an establishment called the Red Bird Smoke Shop around 11 or 11:30 P.M. on February 12. The defendant drove off in a car with three other individuals. Officer McClary stopped the car because the defendant fit the description of the robber of the Farm Fresh Store. The officer acquired the name and address of the defendant and then released him pending further investigation.

As a result of Officer McClary's information a picture of the defendant was obtained. According to James Casper, another police officer, he took 10 photographs to Graham's house on February 14. Graham "thumbed through" the photographs and indicated that the second or third photograph depicted the man he had observed outside the Farm Fresh Store. Graham testified that he was shown three photographs, one of which he identified. Graham had previously viewed numerous photographs but was unable to identify any; nor was he able to identify either of the two suspects the police had picked up on the night of the armed robbery.

David Whipple, an Alton police officer, arrested the defendant on February 16, 1974. At the time of his arrest, the defendant was wearing a blue and white (or gray) "CPO" jacket. This jacket was retained by the police as evidence.

Officer McClary conducted a lineup on February 19, 1974. Both

Geraldine Mueller and Lester Graham viewed the lineup. While Mrs. Mueller was unable to make an identification, Lester Graham identified the defendant as the man he had seen outside the Farm Fresh Store on the night in question. The defendant was not wearing the "CPO" jacket during the lineup proceedings.

At the trial Lester Graham again identified the defendant as the person he observed exiting from the Farm Fresh Store on the night in question. He also identified the "CPO" jacket the police had taken from the defendant as the same jacket he had observed on the man who had exited the Farm Fresh Store. Mrs. Mueller did not identify the defendant during the trial.

The only witness for the defense was the defendant. While he admitted being stopped by Officer McClary on February 12, he denied that he had committed the offense in question. He also denied that he had been at the Farm Fresh Store that evening. The defendant testified that he had been in the Red Bird Smoke Shop for 1½ to 2 hours and that previous to that time he had been in the Cadillac Lounge in Cottage Hills.

The first issue we reach is whether the defendant was proven guilty beyond a reasonable doubt. The defendant argues that numerous factors militate against an affirmative answer to this question. Among the factors noted by the defendant are: (1) that the witness only observed the perpetrator of the crime for 5 to 10 seconds; (2) that the witness was never closer than 3 to 6 feet to the perpetrator; (3) that the observation occurred at night; (4) that the description of the clothing played a role in the defendant's apprehension; (5) that the victim of the crime could not identify the defendant; and (6) that the witness observed the perpetrator before he was aware that a crime had occurred.

We have examined the record keeping in mind each of these factors. We have concluded that such factors, whether considered individually or collectively, do not discredit the testimony of the State's eyewitness, much less require reversal of the jury's verdict of guilty. While we consider the circumstances under which a witness observes an individual of paramount importance, as we stated in *People v. Jackson*, 23 Ill.App.3d 1011, 1016, 320 N.E.2d 400, 403, "The identification does not have to have been under perfect conditions or for a long period of time. (*People v. Stringer, supra; People v. Harris*, 46 Ill.2d 395, 263 N.E.2d 35.)" In the instant case the defendant has failed to show that the State's eyewitness, Lester Graham, had an insufficient opportunity to observe the perpetrator of the offense to permit positive identification. Lester Graham testified that the area in which he viewed the suspect was "very well lit." He also testified the suspect walked towards

him and that he viewed the suspect's face for 5 to 10 seconds. He further testified that even after the suspect passed him, he turned around and continued to observe the suspect. We also consider significant the fact that Graham was able to give the police a fairly detailed description of the suspect. In fact, it was this description which eventually led to the defendant's apprehension. Although the description of the suspect's clothing, the "CPO" jacket, played a role in the defendant's apprehension, it could not, as claimed by the defendant, have affected either Graham's photographic or lineup identification of the defendant since such jacket was not worn by the defendant in either situation. In view of all the foregoing circumstances it is the court's opinion that there was sufficient positive identification of the defendant for the jury to convict him. (See *People v. Jackson*, 23 Ill.App.3d 1011, 320 N.E.2d 400; *People v. Irons*, 20 Ill.App.3d 125, 312 N.E.2d 664.) The fact that the victim of the crime was unable to identify the defendant was not fatal to the State's case. *People v. Thompson*, 18 Ill.App.3d 613, 310 N.E.2d 504.

■■ Similarly, we do not find the photographic identification of the defendant by Graham so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification as insinuated by the defendant. See *Simmons v. United States*, 390 U.S. 377, 19 L.Ed. 2d 1247, 88 S.Ct. 967; *People v. Chandler*, 7 Ill.App.3d 949, 289 N.E.2d 67; *People v. Wooley*, 127 Ill.App.2d 249, 262 N.E.2d 237; *People v. Campbell*, 113 Ill.App.2d 242, 252 N.E.2d 26.

The second point in the defendant's appeal is that "the trial court erred in precluding the defendant from eliciting testimony concerning a subsequent robbery at the same store." While the defendant acknowledges that the defense counsel did not comply with the "technical requirements for an offer of proof," he contends that such failure did not waive this issue since the record "clearly demonstrates that the trial judge understood the objection and the character of the evidence, but would not admit such evidence." We do not agree.

■■ At the defendant's trial the defense counsel claimed that it was "very relevant to find out the description of that robber to see if he matched the robber of February 12, 1974," since he *believed* "the description does fit." The defense counsel gave no reasons for his belief that the descriptions would match. Had there been a great similarity in the description of the second robber, the defense counsel should have made an offer of proof stating the specific facts which would be elicited to establish the purported similarity. It was the responsibility of the defense counsel to state precisely what the excluded testimony would reveal, not merely allude to what might be revealed or what he believed. Even on appeal the defendant has failed to state what specific facts

could have been elicited to establish the purported similarity between the second robber and the robber of February 12, 1974. Also noteworthy is the fact that while the trial court prevented the defense counsel from inquiring into the description of the second robber, it did not prevent the defense counsel from asking the witness if she had, subsequent to the robbery of February 12, 1974, seen anyone who resembled the robber of February 12, 1974. Under these circumstances we cannot say that the trial court erred in excluding evidence concerning the second robbery of the Farm Fresh Store.

Accordingly, we affirm the judgment of conviction entered by the circuit court of Madison County and the sentence imposed thereunder.

Judgment affirmed.

KARNS and CARTER, JJ., concur.